# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————

Decided May 18, 2012

No. 11-5349

STEPHEN LAROQUE, ET AL.,
APPELLANTS

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL OF THE UNITED
STATES, ET AL.,
APPELLEES

————

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00561)

————

*Michael A. Carvin*, *Hashim M. Mooppan*, and *Michael E. Rosman* were on the briefs for the appellants.

*Ronald C. Machen*, *Jr.*, U.S. Attorney, and *Diana K. Flynn*, *Linda F. Thorne*, and *Sarah E. Harrington*, Attorneys, U.S. Department of Justice, were on the brief for appellees. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

*J. Gerald Hebert* and *Arthur B. Spitzer* were on the briefs for intervenors-appellees.

Before: TATEL and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: In November 2008 the citizens of Kinston, North Carolina approved a referendum making local elections nonpartisan. Because Kinston is located in Lenoir County, one of several North Carolina counties covered by § 5 of the Voting Rights Act ("VRA"), see 30 Fed. Reg. 9897 (Aug. 7, 1965), the city had to seek preclearance from the Department of Justice before the law could take effect. See 42 U.S.C. § 1973c. On August 17, 2009 the Attorney General interposed an objection on the grounds that the proposed law would have discriminatory effects on Kinston's black population—specifically that it would tend to deny black candidates the benefit of partisan Democratic white "crossover" votes. Letter from Loretta King to James P. Cauley III, Joint Appendix 46.

Appellants, a group of private individuals and a membership organization that supported the law, then brought this suit, challenging the constitutionality of § 5 and arguing that, as amended by the VRA's 2006 reauthorization, § 5 exceeded the powers granted to Congress by the Reconstruction Amendments and violated the Fifth Amendment's equal protection guarantee. The district court initially dismissed the suit for lack of standing, see *LaRoque v. Holder*, 755 F. Supp. 2d 156, 159, 168 (D.D.C. 2010), but we reversed and remanded based on the standing of plaintiff John Nix, who had announced his intention to run for the Kinston City Council in the 2011 elections and had provided sufficient evidence that partisan elections increased his ballot-access costs and decreased his likelihood of victory. See *LaRoque v. Holder*, 650 F.3d 777, 785-87 (D.C. Cir. 2011).

On remand the district court granted summary judgment for the government, holding § 5 constitutional. See *LaRoque v. Holder*, -- F.Supp.2d --, 2011 WL 6413850 (D.D.C. Dec. 22, 2011). This appeal followed.

While the appeal was pending before this court, and before oral argument could take place, the Justice Department changed its mind in light of some new evidence that it received in a separate preclearance proceeding. After requesting some additional information from Lenoir County, the Department informed the court and the parties that the Attorney General was withdrawing his objection to the proposed change. Letter from Thomas E. Perez to James P. Cauley III (Feb. 10, 2012). Three days later, the government filed its merits brief arguing in part that the case had been mooted by the Attorney General's actions. See Appellees' Br. 18-23. After considering the supplemental briefing from both parties, we agree with the government and therefore vacate the judgment and remand the case to the district court with instructions to dismiss for lack of jurisdiction.

\* \* \*

Article III limits our authority to "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc). At first blush, it would seem that, thanks to withdrawal of the objection, Kinston can implement the referendum and hold nonpartisan elections, and the injury on which we originally found standing—the extra burden a partisan system placed on Nix's chance to get elected—has

effectively disappeared. Appellants, however, offer three arguments why the Attorney General's actions have not rendered their claims moot. We take each in turn.

Appellants' primary contention is that the VRA does not grant the Attorney General the power to withdraw a § 5 objection once made, and that therefore the Justice Department's February 10th letter is without legal effect. See Appellants' Response to the Attorney General's Mot. to Dismiss as Moot ("Appellants' Response") 3. In an earlier case we assumed without deciding that the Department had authority to withdraw an objection. *Harris v. Bell*, 562 F.2d 772, 774 (D.C. Cir. 1977). Now we must decide.

The statute itself indeed makes no mention of withdrawal or reconsideration of § 5 objections. See 42 U.S.C. § 1973c. The Attorney General claims that direct authority for his action is to be found in regulations promulgated by the Justice Department over four decades ago. See 28 C.F.R. § 51.46; 36 Fed. Reg. 18,186, 18,190 (Sept. 10, 1971). Although § 5 does not explicitly grant the Department power to promulgate implementing regulations, such authority has long been recognized, see *Georgia v. United States*, 411 U.S. 526, 536-37 (1973), and the Supreme Court has accorded such regulations "substantial deference," *Lopez v. Monterey County*, 525 U.S. 266, 281 (1999).

Appellants offer no reason—and we can imagine none— why the Department should be unable to withdraw an objection. The Department argues that absent such authority it would "be unable to correct errors in preclearance decisions or take account of changes in law or facts without asking the jurisdiction to resubmit the proposed change." Appellees' Reply in Support of the Attorney General's Mot. to Dismiss 3. Of course this argument itself assumes that such resubmission and approval automatically overrides a prior objection. And

that assumption is clearly well-founded; otherwise the jurisdiction could obtain clearance for laws erroneously objected to only by launching a wholly unnecessary lawsuit. Neither the text nor the purpose of § 5 provides any reason to require either of these pointless exercises, and we therefore have no trouble finding the Department's assertion of authority to withdraw objections to be reasonable and consistent with the statutory scheme.

Second, appellants argue that § 5 might still injure them in the future. One of the appellants, Stephen LaRoque, informs us that as a state legislator, he intends to propose two "local bills" that would change voting practices in Lenoir County, and that these proposals will soon require preclearance. See Appellants' Response 9; *id*., Attach. A. Of course they would require preclearance only *if* they are passed into law and implemented.

And that's a big "if." LaRoque tells us that "[b]y custom and practice," other members of the North Carolina General Assembly "defer to the members whose districts are affected by a local bill." *Id*., Attach. A. LaRoque acknowledges that he represents only "parts" of Lenoir County and the City of Kinston. *Id*. Indeed, according to the North Carolina General Assembly's website, the other part of Lenoir County is represented by an African-American Democrat named William Wainwright. See Lenoir County Representation, North Carolina General Assembly, http://www.ncleg.net/gascripts/counties/counties.pl?county=Lenoir (last visited May 9, 2012). LaRoque does not even claim that Mr. Wainwright agrees with his proposal, or that in the event of a split between Lenoir County's representatives the other members of the Assembly would still "defer" to him.

Even assuming those gaps were filled, appellants offer us no evidence that the Department would object to either of the

proposed changes, or, apart from a conclusory assertion, that the failure to implement either change would cause them any cognizable injury. We thus agree with the government that such hypothetical legislation is far too speculative to constitute a continuing "personal stake" in the validity of § 5. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990).

Finally, appellants argue that invalidating § 5 would give Nix a "strong argument" that the North Carolina State Board of Elections should order a new election for the Kinston City Council. See Appellants' Response 10. Although North Carolina law does make provision for new elections in certain conditions, see N.C. Gen. Stat. § 163-182.13(a), North Carolina courts have held that "[t]here is [still] no statutory authority vesting the State Board with the power to revoke a certificate of election" once it has issued and once the elected officials have been sworn in. *In re Caldwell County Election Protests of Hutchings*, 600 S.E.2d 901 (table), 2004 WL 1610347, at *3 (N.C. Ct. App. 2004). The prospect of a new election in the event of § 5's invalidation is thus too speculative to give appellants a continued stake in the litigation.

* * *

Due to the Attorney General's withdrawal of his objection, nothing will hinder appellant Nix from running in a nonpartisan election during the next cycle. Given this, and appellants' inability to present us with any other cognizable injury caused by § 5, we hold that appellants have "obtained everything that [they] could recover" from this lawsuit, *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986), and that the case is thus moot.

We vacate the judgment of the district court and remand the case with instructions to dismiss for lack of jurisdiction.

*So ordered.*