66 A.3d 684

**Paul F. KENDALL, et al.**

v.

**HOWARD COUNTY, Maryland.**

**No. 50, Sept. Term, 2012.**

Court of Appeals of Maryland.

May 21, 2013.

Susan B. Gray, Highland, MD, Paul F. Kendall, Ellicott City, MD, for Petitioners.

Loius P. Ruzzi, Senior Assistant County Solicitor, (Margaret Ann Nolan, Howard County Solicitor, Howard County Office of Law, Ellicott City, MD), for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, ALAN M. WILNER, (Retired, Specially Assigned), JJ.

BARBERA, J.

■■ In order to pursue a civil action a plaintiff must demonstrate "standing" to bring the suit, meaning that the plaintiff must show that he or she "is entitled to invoke the judicial process in a particular instance." *Adams v. Manown,* 328 Md. 463, 480, 615 A.2d 611 (1992). When, as in the present case, a plaintiff seeks to redress what is claimed to be a public wrong, the plaintiff must also demonstrate that he or she has "suffered some special damage from such wrong differing in character and kind from that suffered by the general public." *Weinberg v. Kracke,* 189 Md. 275, 280, 55 A.2d 797 (1947).

Petitioners, two residents of Howard County, Maryland, filed a complaint in the Circuit Court for Howard County seeking a declaratory judgment that a variety of County resolutions, ordinances, zoning decisions, and administrative actions violated the Howard County Charter (Charter).[1] Petitioners claim that Respondent, Howard County (County), by

---

1. All statutory references herein are to sections of the Howard County Charter, unless otherwise identified.

taking certain actions by resolution or administrative decision, rather than passing an original bill as the Charter requires for all legislative acts, denied Petitioners the opportunity to petition those acts to referendum. This, allege Petitioners, infringes their right to referendum under the Charter and, consequently, violates their interests in their constitutional rights to free speech and to vote.

Howard County moved to dismiss the action for declaratory relief, asserting, among other grounds, that Petitioners lacked standing to bring the action. Petitioners countered that their standing lay in the language of the Charter itself. The Charter reserves to "the people" of Howard County the right to petition to referendum "any law or part of a law" enacted by the County Council, *see* § 211, and defines certain planning and zoning activities as "legislative acts," which "may be petitioned to referendum by the people of the county pursuant to Section 211 of the Charter," *see* § 202(g). Notably, Petitioners expressly disclaimed any other form of standing.

The Circuit Court granted the motion to dismiss, ruling, in pertinent part, that Petitioners lacked standing. The Court of Special Appeals affirmed the judgment of dismissal, holding that Petitioners failed to show a concrete injury to their voting rights and thereby lacked standing. *Kendall v. Howard County*, 204 Md.App. 440, 453, 41 A.3d 727 (2012).

We granted certiorari to review the judgment of the Court of Special Appeals and now affirm the judgment of that Court.

## I.

### *The Howard County Charter*

Howard County adopted a charter form of home rule in 1968.[2] *Turf Valley Assocs. v. Zoning Bd. of Howard Cnty.,*

---

**2.** The charter form of county government is permitted by Article XI–A of the Constitution of Maryland, the "Home Rule Amendment." For a thorough discussion of Article XI–A, see *Ritchmount P'ship v. Bd. of Supervisors of Elections*, 283 Md. 48, 56–60, 388 A.2d 523 (1978). In short, that constitutional provision grants a chartered county a certain

262 Md. 632, 634, 278 A.2d 574 (1971). The Charter is, "in effect, a local constitution," which "fixes the framework for the organization of the county government." *Ritchmount P'ship v. Bd. of Supervisors of Elections*, 283 Md. 48, 58, 388 A.2d 523 (1978). The Charter vests the executive power in the County Executive, *see* § 302, and the legislative power in the County Council,[3] *see* § 202.

The County Council must pass all laws by "original bill." § 209(a); *see also* § 209(c) (setting forth the "[p]rocedure for passage of laws"). The Charter refers to a "bill" that has been enacted in conformance with the Charter as either an "act," "ordinance," "public local law," or "legislative act." § 914(a), (b). "Resolution," by contrast, is defined as "a measure adopted by the Council having the force and effect of law but of a temporary or administrative character." § 914(c).[4] The terms resolution and ordinance are distinct:

> measure of autonomy over local affairs but "does not in and of itself confer *legislative* power upon the counties. Instead it mandates that the General Assembly expressly enumerate and delegate those powers exercisable by counties electing a charter form of government." *Id.* at 57, 388 A.2d 523; *see* Md. Const. art. XI–A, § 2 (entitled "General Assembly to provide grant of express powers ..."); Md.Code (1957, 2011 Repl.Vol., 2012 Supp.) art. 25A, § 5 (listing the express powers of a chartered county).

3. Section 207 of the Charter describes the legislative powers of the County Council:

> The Council is vested with the law-making power of the County, including all such powers as heretofore have been exercised by the General Assembly of Maryland and transferred to the people of the County by the adoption of this Charter. The Council shall also have and may exercise such legislative powers as may be bestowed upon counties by the Constitution and laws of this State from time to time. The Council shall provide for the punishment of violations of any provisions of this Charter and may provide for punishment of violations of ordinances, resolutions, rules and regulations. Maximum penalties shall be as provided in State law.

4. Section 914(d) explains that, as used in the Charter,

> The word "law" shall be construed as including all acts, public local laws, resolutions and other legislative acts of the Council, all ordinances and resolutions of the County Commissioners not hereby or hereafter amended or repealed, and all public general laws and public local laws of the Maryland General Assembly in effect from

A resolution "ordinarily denotes something less solemn or formal than, or not rising to the dignity of, an ordinance." A resolution passed by a legislative body "deals with matters of a special or temporary character ... [and] generally speaking, is simply an expression of opinion or mind concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality." ...

An ordinance is distinctly a legislative act; it prescribes "some permanent role of conduct or government, to continue in force until the ordinance is repealed."

*Inlet Assocs. v. Assateague House Condo. Ass'n*, 313 Md. 413, 427–28, 545 A.2d 1296 (1988) (first and second alterations in original) (quoting E. McQuillin, *Municipal Corporations*, § 15.02 (3d ed.1981)).

Section 211(a) of the Charter reserves to the people the right to petition to referendum any law enacted by the County Council. That section, entitled "Scope of the referendum," provides, in relevant part,

The people of Howard County reserve to themselves the power known as "The Referendum," by petition to have submitted to the registered voters of the County to approve or reject at the polls, any law or a part of any law of the Council. The referendum petition against any such law shall be sufficient if signed by five per centum of the registered voters of the County, but in any case not less than 1,500 nor more than 5,000 signatures shall be required. Such petition shall be filed with the Board of Supervisors of Elections of Howard County within sixty days after the law is enacted.[5]

---

time to time after the adoption of this Charter, whenever such construction would be reasonable.

5.  This excerpt of § 211(a) of the Charter reflects the language in effect at the time this litigation was initiated. A proposal to amend this subsection was approved by the voters of Howard County in November 2012, and, as a result, the number of signatures required is now "five

In 1994, the people of Howard County successfully petitioned to referendum, and the majority of voters approved at the polls, a charter amendment clarifying that certain acts related to land use taken by the County must be passed by original bill, and therefore are subject to the people's right to referendum.  *See* Charter § 202(g) (Editor's note).  That amendment was codified at § 202(g) of the Charter, which reads:

> Any amendment, restatement or revision to the Howard County General Plan, the Howard County Zoning Regulations or Howard County Zoning Maps, other than a reclassification map amendment established under the "change and mistake" principle set out by the Maryland Court of Appeals, is declared to be a legislative act and may be passed only by the Howard County Council by original bill in accordance with the legislative procedure set forth in Section 209 of the Howard County Charter.  Such an act shall be subject to executive veto and may be petitioned to referendum by the people of the county pursuant to Section 211 of the Charter.

As we shall see, it is this section, in conjunction with the general referendum provisions in § 211, upon which Petitioners base their claim that they have standing to pursue declaratory relief for the County's alleged violations of the Charter.

### The Litigation

Petitioners, Paul F. Kendall and Frank Martin, are taxpayers, property owners, registered voters, and residents of Howard County, Maryland.  In 2009, Petitioners, along with other plaintiffs,[6] initiated the present action in the Circuit Court for Howard County.  They sought a declaration that specified

---

per centum of the qualified voters of the County calculated upon the whole number of votes cast in the County for Governor at the last preceding gubernatorial election." That change does not bear on our decision in this case.

**6.** The amended complaint included Kendall and Martin as plaintiffs, as well as Phillip Rousseau and C. Edward Walter.

acts and decisions relating to land use and attributable to the County were null and void *ab initio.* Petitioners view those decisions as "legislative acts" that were accomplished by means other than passage by original bill, in violation of the Charter. Petitioners also sought to enjoin the County from taking any steps in furtherance of the challenged acts.[7]

In their amended complaint, Petitioners claimed that, taken together, §§ 202(g), 207, 209, and 211 of the Charter establish the right of the people of Howard County to petition to referendum and vote on all County decisions that are "legislative acts." Petitioners alleged that by failing to adhere to the law-making procedures set forth in the Charter, particularly with respect to certain land use decisions,[8] the County "circumvent[s] the people's right of referendum and their ability to veto or approve these decisions at the polls." Each of the

---

7. This was not Petitioners' first litigation effort. Early in 2009, Petitioners Kendall and Martin, together with 11 other plaintiffs, filed suit in the United States District Court for the District of Maryland, alleging, under 42 U.S.C. § 1983, that the County had "violated their First and Fourteenth Amendment rights by denying them the right of referendum as it is preserved in the Howard County Charter." *Kendall v. Howard County*, No. JFM 09–CV369, 2009 WL 2358359, at *1 (D.Md.2009) (unreported). The County moved to dismiss the action, asserting that the plaintiffs lacked standing to pursue it and, in any case, the federal court, under the authority of *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), should abstain from deciding the case, given the state law issues inherent in it. The District Court dismissed without prejudice the claims for declaratory and injunctive relief on the ground of abstention. The District Court stayed Petitioners' claims for damages, giving Petitioners 60 days to file an action in state court. Petitioners appealed. While that appeal was pending, Petitioners filed the present action in the Circuit Court for Howard County. The Court of Appeals for the Fourth Circuit subsequently vacated the order of the District Court and instructed it to dismiss the complaint in its entirety because Petitioners lacked standing. *Kendall v. Howard County*, 424 Fed.Appx. 232, 235 (4th Cir.2011) (per curiam) (unreported).

8. We recognize that Petitioners' amended complaint seeks to invalidate various resolutions, council bills, zoning regulations, zoning map amendments, administrative decisions, portions of the County code, an agreement between the County and a developer, and approvals of interchange construction. Yet, for ease of reference, we shall refer to these collectively throughout the opinion as County decisions.

four counts of the amended complaint identified specific County decisions, which Petitioners argued either did not follow the procedure required by the Charter for legislative acts, or authorize the Council to take action by resolution or by administrative decision that the Charter requires be accomplished by original bill.  In Count I, Petitioners asked the Circuit Court to invalidate 54 resolutions passed by the County Council between 2006 and 2008 and five council bills enacted between 1988 and 1994 (specifying that certain actions be undertaken by resolution).  In Count II, Petitioners demanded that the Circuit Court likewise invalidate: § 16.200 *et seq.* of the Howard County Code; five sections of the Howard County Zoning Regulations (§§ 117.1, 117.3, 125, 126, and 127.1); nine individual zoning map amendments approved by the Zoning Board; and a zoning map change made by decision of the Department of Planning and Zoning.  Similarly, in Count III, Petitioners sought a declaration that the following are null and void: § 18.101 of the County Code (delegating to the Director the authority to make Metropolitan District inclusion decisions); §§ 18.1205 through 18.1210 of the Howard County Code (permitting shared septic systems); 40 decisions of the Director of Public Works, made between 2006 and 2008, that incorporated specified properties into the Metropolitan District;[9] and an agreement between the County and a developer accepting a particular shared septic system into the County's public sewerage system.  And in Count IV, Petitioners mounted the same challenge to approval by County officials of the construction of an interchange and the study

---

9.  The Metropolitan District is Howard County's public water and sewer district.  The Howard County Code provides that, "[e]xcept for a parcel that the Health Department orders connected to the public water or sewerage system under section 12.105 of the County Code, only a parcel that is located in the metropolitan district may be served by public water or sewer."  Howard County Code § 18.101(a)(1).  The Code further describes the properties that are included in the Metropolitan District and establishes the several procedures by which a property may gain entry into the Metropolitan District.  One method to obtain incorporation into the Metropolitan District is by securing approval from the Director of Public Works.  *See* Howard County Code § 18.101(f).

of four other interchanges on Route 32 that were not shown on the County's General Plan.

The County moved to dismiss the amended complaint. Following a hearing, the Circuit Court granted the County's motion on three grounds, ruling that Petitioners failed to: demonstrate particularized harm in connection with the identified County decisions, necessary to establish standing; join all parties who would be affected if the declaratory relief sought were granted; and exhaust administrative remedies.

The Court of Special Appeals affirmed. *Kendall,* 204 Md. App. at 453, 41 A.3d 727. The Court noted that neither the failure to join necessary parties nor the failure to exhaust administrative remedies would alone justify dismissal in this case. *Id.* at 448–49, 41 A.3d 727. The Court concluded, though, that the Circuit Court properly dismissed the action for lack of Petitioners' standing to sue because they had demonstrated no "concrete injury" to their right to vote. *Id.* at 453, 41 A.3d 727 (quoting *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). The Court of Special Appeals explained that this is not a case in which "alleged failures in the petition process were at issue, or electoral issues were in the forefront," but rather one in which "voting and referendum is decidedly in the background." *Kendall,* 204 Md.App. at 451, 41 A.3d 727. Further, the Court distinguished between "a compulsory referendum mandated by a legislative body," such as the one at issue in *Bishop v. Bartlett,* 575 F.3d 419 (4th Cir.2009), and "an optional or 'facultative' referendum initiated by citizen petition." *Kendall,* 204 Md.App. at 452 & n. 7, 41 A.3d 727 (citing *Ritchmount,* 283 Md. at 60, 388 A.2d 523). The Court of Special Appeals reasoned that the former is triggered automatically and "the right to vote is undeniably affected," but the right to vote in the present matter, alleged to be infringed upon by the actions of the County Council, is "triggered only when sufficient valid signatures are gathered to place the question on the ballot." *Kendall,* 204 Md.App. at 452, 41 A.3d 727. Noting that Petitioners "ha[d] not initiated the referendum process for any of the challenged land use actions," the Court of

Special Appeals concluded that "the 'critical point' implicating the right to vote has not yet been reached." *Id.* at 453, 41 A.3d 727 (quoting *Bishop*, 575 F.3d at 424).

We issued a writ of certiorari, *Kendall v. Howard County*, 427 Md. 606, 50 A.3d 606 (2012), to answer the following questions posed by Petitioners:

1. Whether the alleged denial by County officials of individual rights protected under the United States Constitution, in this case the First Amendment rights of free speech, association and petitioning, the right to vote, and the 14th Amendment right of substantive due process, all elements of Petitioners' state-created right of referendum, provide the harm necessary to give Petitioners standing to sue in a declaratory judgment action in state court?

2. Whether joinder rules are applicable to the case at bar, and if so, whether the "public rights" exemption as set forth in *National Licorice Co. v. NLRB*, 309 U.S. 350 [60 S.Ct. 569, 84 L.Ed. 799] (1940), or a variation thereof should be applicable to a case such as this where Petitioners have alleged the total and complete circumvention and thus denial of the right of referendum established in their Charter?

Because we hold that Petitioners' amended complaint fails to allege facts sufficient to establish standing, we do not reach the second question presented. We further express no view as to Petitioners' likelihood of success on the merits, particularly as to whether the County decisions identified in the amended complaint are "legislative acts," as Petitioners so contend.

## II.

In reviewing a trial court's grant of a motion to dismiss, "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party." *Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 475, 860 A.2d 871 (2004). We then

determine whether the trial court was "legally correct in its decision to dismiss." *Washington Suburban Sanitary Comm'n v. Phillips,* 413 Md. 606, 618, 994 A.2d 411 (2010) (quoting *McDaniel v. Am. Honda Fin. Corp.,* 400 Md. 75, 83, 926 A.2d 757 (2007)). Although it is "rarely appropriate" to dismiss a declaratory judgment action, dismissal is proper "when the party seeking such judgment has no standing and there is no justiciable controversy properly before the court." *Roper v. Camuso,* 376 Md. 240, 246–47 n. 3, 829 A.2d 589 (2003).

Petitioners argue here, as they have below, that the right of referendum over legislative acts, reserved in the Charter to "the people," is itself sufficient to "create[ ] standing in Petitioners and every other 'Person' in the County" to allege that a particular decision is a "legislative act" and thus should have been accomplished by the procedures laid out in the Charter for original bills. Petitioners also contend that the complete denial of the right to petition the alleged legislative acts to referendum consequently renders Petitioners unable to exercise their First Amendment rights to free speech and political association (i.e., the petition circulation and signature-gathering process) and their constitutional right to vote on successful petitions. According to Petitioners, the mere allegation of a violation of these constitutional and referendum rights is sufficient to confer standing.

The County responds that the test for standing proposed by Petitioners "would bestow upon each and every 'person in the County' the right to sue for any past, present or future perceived violation of the Charter, regardless of whether such person sustained an injury or adverse effect of any kind." The County submits that the Circuit Court properly dismissed the action because Petitioners have not alleged "any legally protectable interest sufficient to warrant the invocation of the court's power to provide declaratory relief." The County observes that Petitioners have made no attempt to show they have suffered any concrete or particularized harm as a result of the County actions identified in the amended complaint. As the County sees it, Petitioners' claim is best characterized as a

"generalized interest" in forcing the County to comply with its own Charter, which does not, in and of itself, confer standing. We agree with the County.

▮▮▮▮ "We have said time and again that the existence of a justiciable controversy is an absolute prerequisite to the maintenance of a declaratory judgment action." [10] *Md. State Admin. Bd. of Election Laws v. Talbot Cnty.*, 316 Md. 332, 339, 558 A.2d 724 (1988). "The doctrine of standing is an element of the larger question of justiciability and is designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution." *Hand v. Mfrs. & Traders Trust Co.*, 405 Md. 375, 399, 952 A.2d 240 (2008) (quoting *Sec. Pac. Nat'l Bank v. Evans*, 31 A.D.3d 278, 820 N.Y.S.2d 2, 3–4 (2006)); *see Talbot Cnty.*, 316 Md. at 339, 558 A.2d 724 (observing that "[j]usticiability encompasses a number of requirements," including that "the plaintiffs must have standing to bring suit"). "Under Maryland common law, standing to bring a judicial action generally depends on whether one is 'aggrieved,' which means whether a plaintiff has 'an interest such that he [or she] is personally and specifically affected in a way different from ... the public generally.' " *Jones v. Prince George's Cnty.*, 378 Md. 98, 835 A.2d 632 (2003) (first alteration in Jones; second alteration in *Sugarloaf*) (quoting *Sugarloaf Citizens' Ass'n v. Dep't. of the Env't*, 344 Md. 271, 288, 686 A.2d 605 (1996)); *see, e.g., Evans*

---

**10.** Maryland's Uniform Declaratory Judgments Act addresses standing in the following manner:

> (a) *In general.*—Except as provided in subsection (d) of this section, a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:
> (1) An actual controversy exists between contending parties;
> (2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or
> (3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

Maryland Code (1974, 2013 Repl.Vol.) § 3–409(a) of the Courts and Judicial Proceedings Article.

*v. State,* 396 Md. 256, 328, 914 A.2d 25 (2006) ("[A]n individual or an organization has no standing in court unless he has also suffered some kind of special damage from such wrong differing in character and kind from that suffered by the general public." (quoting *Medical Waste Assocs., Inc. v. Md. Waste Coalition, Inc.,* 327 Md. 596, 612, 612 A.2d 241 (1992)) (internal quotation marks omitted)). Moreover, a plaintiff must satisfy the court that "the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); *accord 120 West Fayette St., LLLP v. Mayor of Baltimore,* 407 Md. 253, 270, 964 A.2d 662 (2009).

In their amended complaint Petitioners attack a laundry list of County land use and zoning decisions, spanning several years, all of which Petitioners have asked the Circuit Court to invalidate as null and void *ab initio.* Petitioners' standing to litigate their claim fails under our cases involving county and municipal land use decisions, in each of which we have applied unfailingly the "special damage" requirement of standing principles. *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A.2d 289 (1967), supplies an example. We plainly stated there that, when "a declaration [11] nullifying a zoning ordinance for constitutional or other reasons is sought," similar to the declaration sought by Petitioners here, a plaintiff must allege with specificity precisely "how he is *specially*

---

11. In *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A.2d 289 (1967), we distinguished between standing to seek a declaration that a particular zoning ordinance is void, similar to the declarations sought by Petitioners here, and standing to seek judicial review of a decision of the board of zoning appeals. *Id.* at 144, 230 A.2d 289. The two actions have similar standing principles:

> [T]he principles that confer standing upon an adjoining, confronting or neighboring property owner to seek judicial review of land use decisions, logically extend to an adjoining, confronting or neighboring property owner that is challenging a municipalities' allegedly illegal avoidance of urban renewal and procurement ordinances.

*120 West Fayette St., LLLP v. Mayor of Baltimore,* 407 Md. 253, 272, 964 A.2d 662 (2009).

*damaged* by the zoning ordinance." *Id.* at 144, 230 A.2d 289 (emphasis added). The determination of whether a plaintiff has sufficiently alleged that he or she is "personally and specially affected in a way different from that suffered by the public generally" depends upon "the facts and circumstances of the particular case under review." *Id.*

We have held that a party's proximity to the area affected by a local land use decision may, under certain circumstances, satisfy this "specially damaged" standing requirement. Recently, in *Ray v. Mayor of Baltimore*, 430 Md. 74, 59 A.3d 545 (2013), we summarized the principles of such aggrievement as follows:

> In sum, Maryland courts have accorded standing to challenge a rezoning action to two types of protestants: those who are *prima facie* aggrieved and those who are almost *prima facie* aggrieved. A protestant is *prima facie* aggrieved when his proximity makes him an adjoining, confronting, or nearby property owner. A protestant is specially aggrieved when she is farther away than an adjoining, confronting, or nearby property owner, but is still close enough to the site of the rezoning action to be considered almost *prima facie* aggrieved, *and* offers "plus factors" supporting injury. Other individuals are generally aggrieved.

*Id.* at 85, 59 A.3d 545; *see also 120 West Fayette*, 407 Md. at 271–72, 964 A.2d 662.

■ Alternatively, a party, as a taxpayer, may satisfy the "special damage" standing requirement by alleging both "1) an action by a municipal corporation or public official that is illegal or ultra vires, and 2) that the action may injuriously affect the taxpayer's property, meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes." *120 West Fayette*, 407 Md. at 267, 964 A.2d 662; *see also Citizens Planning and Housing Ass'n v. Cnty. Exec.*, 273 Md. 333, 339, 329 A.2d 681 (1974) ("[A] taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency when such action is illegal

or *ultra vires*, and may injuriously affect the taxpayer's rights and property ... only when some special damage is alleged and proved, or a special interest is shown which is distinct from that of the general public." (citations omitted)).

A particularly illustrative example of these two avenues for satisfying the standing requirement is found in *Inlet Associates v. Assateague House Condominium Ass'n*, 313 Md. 413, 545 A.2d 1296 (1988). In *Inlet Associates*, various plaintiffs sought, among other things, a declaration that Ocean City's transfer of a specified property interest to a developer by resolution was an illegal *ultra vires* act because the disposition was required, under the Ocean City Charter, to be passed by ordinance rather than resolution. *Id.* at 422–23, 545 A.2d 1296. Like the Howard County Charter, § C–411 of the Ocean City Charter established a procedure by which the people can petition ordinances to referendum. *Id.* at 426, 545 A.2d 1296.

Agreeing with the plaintiffs that "a simple resolution" was not sufficient "to validate the City's actions," and, instead, an ordinance was required, *id.* at 434, 545 A.2d 1296, we determined, as had the trial court, that the plaintiffs had demonstrated the requisite standing to complain, *id.* at 441, 545 A.2d 1296. We identified the various ways in which the plaintiffs had shown that the proposed development plan "would adversely affect the value and use of the plaintiffs' properties," which were situated near the proposed development site. *Id.* at 441–42, 545 A.2d 1296. We added that, as taxpayers, the plaintiffs had sufficiently alleged the "reasonable existence of [the] potential" for "pecuniary loss or increased taxes." *Id.* at 442–43, 545 A.2d 1296.

*Inlet Associates* demonstrates that plaintiffs who allege a local government has failed to use ordinances to take action, as required by their local charter, may invoke the well-recognized avenues of either property owner standing or taxpayer standing to vindicate their claim, if the facts and circumstances of that case so provide. *Cf. 120 West Fayette*, 407 Md. at 258, 269, 273, 964 A.2d 662 (holding that the

allegations in the plaintiff's complaint were sufficient to establish either taxpayer standing or property owner standing where the plaintiff sought a declaratory judgment that a Land Disposition Agreement entered into by the defendants, the Mayor and City Council of Baltimore, violated the Charter and laws of the City); *Ansell v. Howard County Council*, 264 Md. 629, 634, 287 A.2d 774 (1972) (concluding that a plaintiff had standing under the circumstances, as a taxpayer, to seek a declaration that a County resolution was illegal and *ultra vires* because it should have been passed by "bill" or "ordinance" under the Howard County Charter).

██ Like the plaintiffs in *Inlet Associates*, Petitioners claim that certain local government actions related to land use are invalid because they were effectuated in violation of the local charter. More specifically, Petitioners allege that by using this improper procedure to make decisions, the County circumvents the people's right to petition those decisions to referendum. But unlike the plaintiffs in *Inlet Associates*, Petitioners have expressly eschewed any reliance on taxpayer standing, and they have not demonstrated that they are specially harmed by the County decisions as property owners. Petitioners do not even suggest that they have made either showing. To the contrary, Petitioners argue that the ability to enforce the right to referendum in the Charter should not be restricted to persons with specially affected property rights or taxpayers who may suffer pecuniary harm.[12]

Petitioners focus on the County's alleged failure to use the required original bill process for legislative acts, rather than the effects of those County decisions. Petitioners claim that they have been denied entirely the opportunity to exercise their right to petition what they believe are legislative acts to referendum, a right reserved in the Charter itself. Therefore, according to Petitioners, the right to referendum itself provides a basis for *any person* of Howard County to enforce that

---

12. We offer no opinion herein as to whether Petitioners could have satisfied the standing requirement on either of those grounds.

right by resorting to the judicial process, if they allege it has been infringed.

Petitioners further assert that, although the right to referendum was created by state law, it is protected under the federal Constitution because the infringement of that right consequently infringes "the associational and free speech rights attendant to a referendum effort" and, ultimately, the right to vote. These constitutional rights,[13] conclude Petitioners, are personal, and "[a]ll that is needed for standing is to allege a violation of these rights." In Petitioners' view, the fact that these rights are shared generally by the people of Howard County does not defeat Petitioners' standing to pursue their claims.

Petitioners rely in part for this contention on *Bishop v. Bartlett*, 575 F.3d 419 (4th Cir.2009), in their brief before this Court. The plaintiffs in that case challenged the validity of a North Carolina constitutional amendment, ratified by the voters in a statewide election, that "authorized local government entities to issue bonds for certain types of development projects without first receiving voter approval." *Id.* at 422. Without the amendment, "the North Carolina Constitution generally requires a referendum before a government entity may incur such a debt." *Id.* The plaintiffs claimed that the ballot language describing the amendment was misleading, thereby violating the Due Process Clause of the Fourteenth Amendment. *Id.* However, the plaintiffs did not allege that "they—or any other voter, for that matter—were *actually* misled by the ballot language or that they unsuccessfully attempted to obtain the full text" of the proposed amendment.

---

**13.** Notwithstanding that Petitioners invoke these constitutional rights as a basis from which they have standing to seek a declaratory judgment in state court, they also expressly disavow any desire to have those rights adjudicated at the state level:

The Amended Complaint at issue here does not ask for a declaration that each alleged Charter violation, if indeed it is a violation, violates Petitioners' Federal Constitutional rights. Rather, Petitioners allege a deprivation of these federal rights as their **injury,** but do not request an adjudication of their constitutional claims.

*Id.* at 424 (emphasis added). The Court of Appeals for the Fourth Circuit therefore concluded that those plaintiffs did not have standing because "[t]his type of abstract, generalized interest clearly fails to meet the requirement that an injury be concrete and particularized." *Id.* The Court further concluded, however, that as to one plaintiff in particular, Jack L. Moore, the "widely shared nature" of the alleged deprivation of the right to vote did "not preclude a finding that Moore has suffered an injury in fact." *Id.* at 425.

Contrary to Petitioners' view of the case, *Bishop* does not advance their cause. Notably, the *Bishop* Court specifically pointed out that "merely a claim of 'the right, possessed by every citizen, to require that the Government be administered according to law,'" is not sufficient to confer standing. *Bishop,* 575 F.3d at 424 (quoting *Baker v. Carr,* 369 U.S. 186, 208, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). *See also Bishop,* 575 F.3d at 423 ("[W]hen the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.") (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

Furthermore, the claims made by Plaintiff Moore, which provided him the requisite injury in fact, are distinguishable from those made by Petitioners in their amended complaint. Moore claimed that he was "deprived of his right to vote on the issuance of bonds to finance" a particular project in the city in which he resides, which would have been subject to a compulsory referendum but for the passage of the challenged amendment to the North Carolina State Constitution. *Id.* at 422. The Court concluded that Moore (but evidently no other claimant in that case) satisfied the injury in fact requirement because, although widely "shared by all residents of the city," the harm alleged was sufficiently concrete.[14] *Id.* at 424–25

---

**14.** In the end, the Court determined that although Moore established an injury in fact, he did not have standing because the "harm was not directly caused by any governmental action towards him, but rather by the amendment process during the November 2004 election," rendering

(citing *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 25, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998)). Petitioners, unlike Plaintiff Moore, have no such concrete injury. The Howard County Charter does not afford an automatic right to approve at the polls the County decisions challenged in the amended complaint, and Petitioners have alleged no specific and personal harm flowing from the denial of the opportunity to petition these County decisions to referendum.

Petitioners also find support in several Supreme Court cases suggesting that, in the proper case, an allegation of the infringement of the right to vote, although shared by a large segment of the general public, may be sufficient to establish standing. For example, in *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), several plaintiffs mounted an equal protection challenge to a Tennessee statute that provided for apportionment of seats in the state legislature, alleging that it impaired their voting rights. In holding that the plaintiffs had standing, *id.* at 206, 82 S.Ct. 691, the Court explained that the asserted injury was "not merely a claim of 'the right, possessed by every citizen, to require that the Government be administered according to law,'" *id.* at 208, 82 S.Ct. 691 (quoting *Fairchild v. Hughes,* 258 U.S. 126, 129, 42 S.Ct. 274, 66 L.Ed. 499 (1922)). Rather, the Court concluded, the plaintiffs' alleged injury constituted "a plain, direct, and adequate interest in maintaining the effectiveness of their votes." *Id.* at 208, 82 S.Ct. 691 (quoting *Coleman v. Miller,* 307 U.S. 433, 438, 59 S.Ct. 972, 83 L.Ed. 1385 (1939)). *See also Fed. Election Comm'n v. Akins,* 524 U.S. at 24–25, 118 S.Ct. 1777 (concluding that because the injury at issue was "directly related to voting," it was "sufficiently concrete and specific such that the fact that it is widely shared does not deprive Congress of constitutional power to authorize its vindication in the federal courts").

We agree with the Court of Special Appeals that, in this case, the right to referendum and the related constitutional

---

him unable to satisfy the causation component of standing. *Bishop v. Bartlett,* 575 F.3d 419, 425 (2009).

free speech and voting rights asserted by Petitioners are too attenuated from the allegedly unlawful County decisions identified in Petitioners' amended complaint. *See Kendall,* 204 Md.App. at 451, 41 A.3d 727 ("Contrary to the authorities [Petitioner] cites, where, generally, alleged failures in the petition process were at issue, or electoral issues were in the forefront, voting and referendum is decidedly in the background of [Petitioners'] action."). The federal cases cited by Petitioners involve claims much more closely connected to voting and referenda. *See, e.g., Doe v. Reed,* —— U.S. ——, 130 S.Ct. 2811, 2821, 177 L.Ed.2d 493 (2010) (holding that the disclosure of referendum petitions, under Washington's Public Records Act, does not violate the First Amendment); *Buckley v. Am. Constitutional Law Found.,* 525 U.S. 182, 205, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (affirming the Tenth Circuit's separation of Colorado's "necessary or proper ballot-access controls from restrictions that unjustifiably inhibit the circulation of ballot-initiative petitions"); *Meyer v. Grant,* 486 U.S. 414, 428, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (holding that a "Colorado statute prohibiting the payment of petition circulators imposes a burden on political expression that the State has failed to justify" and thus violated the First Amendment); *Baker v. Carr, supra; Bishop v. Bartlett, supra; Initiative and Referendum Inst. v. Walker,* 450 F.3d 1082, 1086 (10th Cir.2006) (en banc) (involving a challenge to a Utah constitutional provision which required citizen initiatives related to wildlife management to be passed by a supermajority of the voters, as opposed to a simple majority for other types of initiatives). In contrast, the County decisions identified in Petitioners' amended complaint do not implicate Petitioners' constitutional rights, nor the right to referendum under the Howard County Charter, because those County resolutions, administrative decisions, regulations, etc., do not involve voting, speech, or the petition circulation process at all.

Petitioners' reliance on yet another federal case, *LaRoque v. Holder,* 650 F.3d 777 (D.C.Cir.2011), is likewise misplaced.

Petitioners argue that *LaRoque* supports their contention that the alleged denial of the right of referendum is sufficient to establish standing. We disagree. In that case,

> [t]he citizens of Kinston, North Carolina, approved a referendum switching city elections from partisan to non-partisan. Because Kinston lies in a jurisdiction covered by section 5 of the Voting Rights Act of 1965, the city council had no authority to implement the referendum until pre-cleared by federal authorities, and preclearance has not occurred. A candidate for public office [Plaintiff Nix] claiming a state-law entitlement to run under the suspended nonpartisan system, together with other plaintiffs, filed suit seeking to enjoin the Attorney General from enforcing section 5 against Kinston.

*Id.* at 780. The plaintiffs, in addition to seeking an injunction against enforcement of § 5 of the Voting Rights Act, sought a declaration that § 5 was unconstitutional. *Id.* at 782. The Court recognized that, "if Nix lacked a concrete, particularized, redressable injury and was instead seeking only to vindicate the right, possessed by every citizen, to require that the Government be administered according to law, he would have no standing to challenge section 5." *Id.* at 792 (internal quotation marks omitted). Nix, though, had alleged that the Attorney General's objection to the city charter amendment would increase his ballot-access costs and adversely affect his chances of winning the election. *Id.* at 783–84.

The Court held that Nix had standing to challenge § 5 "on the grounds that the provision exceeds Congress's enumerated powers." *Id.* at 793. The Court reasoned, in part, that Nix had sufficiently alleged an injury in fact, *id.* at 787, and his "concrete plan" to enter the upcoming election made those alleged injuries imminent, *id.* at 789. Contrary to Petitioners' reading of the case, the Court did not base its holding on the right of referendum alone, but also—and ultimately—on the specific injuries claimed by one plaintiff in particular, who had alleged he would be adversely affected in a way different from

the general public.[15]

The injuries alleged by Nix in *LaRoque* are markedly different from the injuries asserted by Petitioners here. Petitioners have alleged no specific and personal injuries stemming from the County's actions. They rely, instead, solely on the denial of the right to petition legislative acts to referendum, which is shared by all persons in Howard County.

Petitioners also mount, but do not pursue at any great length, the argument that to limit standing to pursue this action to property owners or taxpayers who allege some special harm as a result of the identified County decisions would constitute a violation of the Equal Protection Clause of the Fourteenth Amendment. For this proposition, Petitioners simply cite a line of Supreme Court cases establishing that, "if a challenged state statute grants the right to vote in a limited purpose election to some otherwise qualified voters and denies it to others, 'the Court must determine whether the exclusions are necessary to promote a compelling state interest.'" *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (per curiam) (quoting *Kramer v. Union Free Sch. Dist., No. 15*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969)).

---

**15.** The subsequent history of *LaRoque v. Holder*, 650 F.3d 777 (D.C.Cir. 2011), further deflates Petitioners' argument. On remand, the district court granted summary judgment in favor of the government. *See LaRoque v. Holder*, 831 F.Supp.2d 183 (D.D.C.2011). After the filing of an appeal, but prior to oral argument, the Attorney General withdrew the objection to Kinston's proposed charter amendment. *LaRoque v. Holder*, 679 F.3d 905, 907 (D.C.Cir.), *cert. denied sub nom. Nix v. Holder*, —— U.S. ——, 133 S.Ct. 610, 184 L.Ed.2d 394 (2012). Notably, the Court of Appeals for the D.C. Circuit held that the case was moot because, at that point, "nothing will hinder appellant Nix from running in a nonpartisan election during the next cycle." *Id.* at 909. The Court rejected the appellants' assertion that the possibility of future injury resulting from § 5 of the Voting Rights Act established a live controversy, in part because of the speculative nature of the claim, and also because there was no evidence that the Attorney General's failure to preclear a future change in local voting practices would cause appellants any "cognizable injury." *Id.* at 908–09.

The challenged state statutes in the federal cases cited by Petitioners granted certain persons the right to vote, while denying it to others. *See Cipriano,* 395 U.S. at 702–03, 89 S.Ct. 1897 (holding unconstitutional a Louisiana statute that permitted only "property taxpayers" to vote in a special election to approve or reject a municipal utility's issuance of revenue bonds); *Kramer,* 395 U.S. at 622, 89 S.Ct. 1886 (holding unconstitutional a New York statute that limited the ability to vote in school board elections in certain districts to parents of public schoolchildren and persons who own or lease property within the district); *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 213, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) (holding unconstitutional provisions of Arizona law that "exclude[d] nonproperty owners from elections for the approval of the issuance of general obligation bonds"); *Harper v. Va. Bd. of Elections,* 383 U.S. 663, 666, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (holding unconstitutional state statutes that condition the right to vote upon payment of a fee). *Cf. Baker v. Carr,* 369 U.S. at 206, 82 S.Ct. 691 (holding the plaintiffs had standing to challenge a Tennessee statute that had the effect of diluting their right to vote). In contrast, Howard County has no Charter or Code provision limiting the ability to exercise the right to referendum; it appears that any person in Howard County may exercise his or her right to initiate a petition to refer County legislation to a vote. *See* Charter § 211; Howard County Code, § 10.400 *et seq.* (entitled "Referendum Procedures"). These cases are inapplicable to the standing issue presented here.

Moreover, the fact that standing is limited to those with a concrete stake in the outcome, i.e., those who have been specially harmed by the County's decisions, does not implicate the Equal Protection Clause. Indeed, the very essence of the standing doctrine is that certain persons may invoke the judicial process in a given case, while others may not.

Petitioners have taken great pains to characterize their grievance as a deprivation of the right to referendum, the right to vote, and related free speech and association rights. Yet, at its core, Petitioners' complaint is grounded in one thing

and one thing only: the allegation that the County's methods for accomplishing certain decisions violate its own Charter. As our colleagues on the Court of Special Appeals observed, this amounts to nothing more than "an abstract, generalized interest in the County's compliance with § 202(g) of the Charter," which is shared by all members of the general public in Howard County. *Kendall,* 204 Md.App. at 453, 41 A.3d 727. On this ground alone, Petitioners have not established standing. The Circuit Court properly dismissed the action for a declaratory judgment and injunctive relief.[16]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONERS.**

---

16. We have not overlooked that the question on which we granted the writ of certiorari included in the list of alleged violations of the United States Constitution a reference to "substantive due process." Petitioners do not argue in the brief, however, a substantive due process violation. We therefore do not address it.