***In the Matter of Winifred Carpenter***, **et al.**
No. 2002, Sept. Term. 2023
Opinion by Leahy, J.

**Summary Judgment > Affidavit**

In order to defeat a motion for summary judgment, the opposing party must provide "*factual assertions, under oath*, based on the *personal knowledge* of the one swearing out an affidavit, giving a deposition, or answering interrogatories." *Miller v. Ratner*, 114 Md. App. 18, 27 (1997) (emphasis in original).

**Summary Judgment > Affidavit**

Affidavits submitted in response to a motion for summary judgment in which affiants state that the information contained in their affidavits is true and correct only "'to the best of [the affiants'] knowledge, information and belief' . . . must be disregarded" under Maryland Rule 2-501(c). *Webb v. Joyce Real Estate, Inc.*, 108 Md. App. 512, 520 (1996).

**Zoning and Land Use > Standing for Judicial Review > Aggrievement**

Maryland case law establishes that property owners within a 200-foot radius of a development site generally qualify as "adjoining, confronting, or nearby property owners," and that this proximity, by itself, establishes their *prima facie* aggrievement. *Ray v. Mayor & City Council of Balt. ("Ray II")*, 430 Md. 74, 83-85 (2013).

**Zoning and Land Use > Standing for Judicial Review > Aggrievement**

"Property ownership is not a prerequisite to aggrievement," *Chesapeake Bay Foundation v. Clickner*, 192 Md. App. 172, 189 (2010), but non-owners must prove special aggrievement by demonstrating that: (1) their "personal or property rights" would be "adversely affected by" a land use or zoning decision, and (2) the decision "personally and specially" would affect them "in a way different from that suffered by the public generally." *Ray v. Mayor & City Council of Balt. ("Ray I")*, 203 Md. App. 15, 26-27 (2012), *aff'd*, 430 Md. 74 (2013).

Circuit Court for Baltimore County
Case No. C-03-CV-23-002855

<u>REPORTED</u>

<u>IN THE APPELLATE COURT</u>

<u>OF MARYLAND</u>

No. 2002

September Term, 2023

_____

IN THE MATTER OF

WINIFRED CARPENTER, ET AL.

Leahy,
Reed,
Raker, Irma S.
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Leahy, J.

_____

Filed: December 27, 2024

Typically, the threshold to establish standing as a party in a court of law on petition for judicial review is higher than that required to establish standing as a party to an administrative proceeding—that is, absent any statute or regulation specifying criteria for administrative standing. In this appeal, we examine whether the appellants established standing to bring their petition for judicial review in the Circuit Court for Baltimore County.

Winifred Carpenter, Jim Lobell, Gayle Killen, Amanda Reardon, Victoria Richards, and Mary Jo Wagandt, (collectively "Appellants"), filed a petition for judicial review challenging the decision by the Baltimore County Board of Appeals (the "Board") affirming a redevelopment plan and granting related zoning variances for the proposed redevelopment of the "Ellicott Mill" property located on the outskirts of Ellicott City, Maryland. The owners of the property, Wilkins Rogers Maryland, Inc. ("Wilkins Rogers"), and the applicant, Terra Nova Ventures, LLC ("Terra Nova") (collectively "Owners" or "Appellees"), filed a motion to dismiss for lack of standing, or in the alternative, for summary judgment. The circuit court granted Owners' motion. Appellants filed a timely appeal and present this Court with two questions:

1. "Did the Circuit Court err in determining that Appellants Killen, Reardon, Richards, and Wagandt were not parties to the administrative proceedings?"

2. "Did the Circuit Court err in determining that all Appellants were not specially aggrieved by the decision of the Board of Appeals?"

As the background facts and our analysis unfold in the opinion below, it shall become clear why Appellants' second question is dispositive. We hold that Appellants

lacked standing to petition for judicial review because they failed to establish that they were specially aggrieved by the decision of the Board approving the underlying redevelopment plan for Ellicott Mill. Accordingly, we shall affirm the circuit court's grant of summary judgment in favor of Owners.

## I.

## LEGAL FRAMEWORK

In this appeal, we do not apply the conventional standard of review in appeals from administrative agencies whereby we "look through" the circuit court's ruling and directly evaluate the decision of the agency. *Hayden v. Md. Dep't of Nat. Res.*, 242 Md. App. 505, 520 (2019) (citing *Kor-Ko, Ltd. v. Md. Dep't of the Env't*, 451 Md. 401, 409 (2017)).[1] This is because "standing to maintain judicial review of an administrative decision is a 'matter to be resolved exclusively by the courts.'" *Turner v. Md. Dep't of Health*, 245 Md. App. 248, 267 (2020) (quoting *Sugarloaf v. Dep't of Env't*, 344 Md. 271, 291-92 (1996), *partially abrogated by statute*, Md. Code (1982, 2013 Repl.Vol.), § 5-204(f) of the Environment Article, as stated in *Patuxent Riverkeeper v. Md. Dept. of Env't*, 422 Md. 294, 298 (2011)). As the Supreme Court explained in *Sugarloaf*,

> Under basic principles of administrative law, as well as the separation of powers requirement set forth in Article 8 of the Maryland Declaration of Rights,[ ] it is not the proper function of an administrative official or agency

---

[1] Typically, when reviewing an administrative agency's decision, our review involves a two-fold inquiry, examining: (1) whether there is substantial evidence in the record to support the agency's findings and conclusions, and (2) whether the agency's decision is premised upon an erroneous conclusion of law. *Hayden v. Md. Dep't of Nat. Res.*, 242 Md. App. 505, 520-21 (2019) (citing *McClellan v. Dep't of Pub. Safety & Corr. Servs.*, 166 Md. App. 1, 18 (2005)).

in the executive branch of government to decide whether a plaintiff or potential plaintiff has standing to maintain an action in court.

344 Md. at 290. Consequently, whether a party has standing to file a petition for judicial review is an issue that we review *de novo*. *See Superior Outdoor Signs, Inc. v. Eller Media Co.*, 150 Md. App. 479, 494 (2003).

To the extent we examine the Board's decision concerning administrative standing in the underlying case, however, we shall accord deference to the Board's factual findings and some deference to its interpretation of the Baltimore County Charter which it regularly administers. *Comptroller of Md. v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 362 (2022).

Before we recite the background facts, we begin with a brief overview of the standing doctrine to provide context for the parties' contentions and the aggrievement issues on which this case turns.

### Doctrine of Standing

The doctrine of standing concerns "the right of [an] individual to assert [a] claim in the judicial forum." *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 438 Md. 451, 517-18 (2014). It "is designed to ensure that a party seeking relief has a sufficiently cognizable stake in the outcome so as to present a court with a dispute that is capable of judicial resolution." *Hand v. Mfrs. & Traders Tr. Co.*, 405 Md. 375, 399 (2008) (quotation omitted). "Indeed, the very essence of the standing doctrine is that certain persons may invoke the judicial process in a given case, while others may not." *Kendall v. Howard Cnty.*, 431 Md. 590, 614 (2013). As the Supreme Court of Maryland has acknowledged:

> [T]he standing requirement is based upon the necessity of limiting the parties to the proceeding to those who are uniquely affected by the decision which is being appealed and precluding frivolous appeals, harassment, or merely crowding the courts with litigation instituted by or involving those persons who are not specially affected by the decision and have no statutory right of appeal.

*Anne Arundel Cnty. v. Bell*, 442 Md. 539, 574 (2015) (quoting Stanley D. Abrams, *Guide to Maryland Zoning Decisions*, § 4.01 (5th ed. 2012)) (block quotation removed).

Generally, unless a statute authorizes otherwise,[2] a party seeking judicial review of an administrative agency decision must establish that the party was (1) a party to the administrative proceedings, and (2) 'aggrieved' by the final decision of the agency. *Cnty. Council of Prince George's Cnty. v. Billings*, 420 Md. 84, 97 n.10 (2011); *see also Turner*, 245 Md. App. at 264. The Maryland Administrative Procedure Act[3] provides under section 10-222 that "a *party* who is *aggrieved* by the final decision in a contested case is entitled to judicial review of the decision[.]" (emphasis added).

The statutory authority for judicial review of county boards of appeals' decisions is found in Maryland Code (1957, 2013 Repl. Vol.), Local Government Article ("LG"), section 10-305. The statute provides that "[a]ny person **aggrieved** by the decision of the

---

[2] Different standing requirements may apply, for example, in cases involving agencies that are not governed by the Maryland Administrative Procedure Act. *See, e.g.*, *Cnty. Council of Prince George's Cnty. v. Chaney Enterprises Ltd. P'ship*, 454 Md. 514, 535 (2017) (explaining that the controlling statute in that case, Section 22-407 of the Land Use Article of the Maryland Code, did not require participation to establish standing for judicial review).

[3] The Maryland Administrative Procedure Act is codified in Maryland Code (1984, 2021 Repl. Vol.), State Government Article ("SG"), § 10-201, *et seq.*

4

board and a party to the proceeding before it may seek review by the circuit court for the county[.]" (Emphasis added). Section 604 of Baltimore County Charter, titled "Appeals from Decision of the Board," similarly provides:

> Within thirty days after any decision by the county board of appeals is rendered, **any party to the proceeding who is aggrieved thereby may appeal such decision to the circuit court of Baltimore County**, which shall have power to affirm the decision of the board, or, if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing, as justice may require . . . . Within thirty days after the decision of the circuit court is rendered, any party to the proceeding who is aggrieved thereby may appeal such decision to the court of appeals of this state. The review proceedings provided by this section shall be exclusive.

(Emphasis added).

In order to be "aggrieved" for purposes of judicial review, a plaintiff must have "an interest such that he or she is personally and specifically affected in a way different from the public generally." *Pizza di Joey, LLC v. Mayor of Balt.*, 470 Md. 308, 343 (2020) (quoting *Kendall,* 431 Md. at 603).[4] To show aggrievement, a plaintiff must demonstrate that the plaintiff has suffered "special damage"; in other words, an injury that is "concrete and particularized," as opposed to an injury based on an "abstract, generalized interest[.]" *Kendall*, 431 Md. at 609. "Such 'special damage' must be 'differing in character and kind from that suffered by the general public.'" *Paula v. Mayor & City Council of Balt.*, 253 Md. App. 566, 581 (2022) (quoting *Kendall*, 431 Md. at 603-04).

---

[4] Neither the Maryland Code nor the Baltimore County Code offers a statutory definition for "aggrieved." *See* BCC § 32-4-281(a) (only providing that "persons aggrieved or feeling aggrieved" may include "a duly constituted civic, improvement, or community association" under enumerated circumstances).

More germane to this appeal, our decisional law instructs that a person "aggrieved" by the land use or zoning decision of a county board of appeals is

> one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is **personally and specially affected in a way different from that suffered by the public generally.**

*Ray v. Mayor & City Council of Balt. ("Ray II")*, 430 Md. 74, 81 (2013) (emphasis added in *Ray II*) (quoting *Bryniarski v. Montgomery Cnty. Bd. of Appeals*, 247 Md. 137, 144 (1967), *partially superseded by statute*, Md. Code (1982, 2013 Repl. Vol.), Environment Article, § 5-204(f)).[5] This "property owner standing" is based on the notion that "a party's proximity to the area affected by a local land use decision may, under certain circumstances, satisfy th[e] 'specially damaged' standing requirement." *Kendall*, 431 Md. at 605 (citing *Ray II*, 430 Md. at 85).

Generally, there are two categories of persons who meet this standing requirement: those who are "*prima facie* aggrieved" and those who are "specially aggrieved," also referred to as "almost *prima facie* aggrieved."[6] *Ray II*, 430 Md. at 85. The Supreme Court

---

[5] The zoning-law concept of "aggrievement" is derived from the "special damage" rule of the public nuisance law. *Ray II*, 430 Md. at 82 ("The 'special damage' rule was an outgrowth of the law of public nuisance."). Under this rule, "an individual could not maintain an action for a public nuisance unless he suffered some special damage from the public nuisance." *Id.* (emphasis removed) (quoting 4 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 63:14 (2012)). Put differently, "[w]ithout the special damage, 'a private citizen has no standing to champion the right of the public in abating a public nuisance.'" *Id.* (quoting Ziegler, *supra*, § 63:14 n.1).

[6] The Maryland Supreme Court has observed that, in addition to these two categories, "[d]icta in Maryland cases suggest a third, poorly-defined category of

(Continued)

6

of Maryland explained the distinction in *Ray II*:

> A protestant is *prima facie* aggrieved when his proximity makes him an adjoining, confronting, or nearby property owner. A protestant is specially aggrieved when [the party] is farther away than an adjoining, confronting, or nearby property owner, but is still close enough to the site of the rezoning action to be considered almost *prima facie* aggrieved, *and* offers "plus factors" supporting injury.

*Id.* Courts have consistently recognized property owners within 200 feet of a subject property as *prima facie* aggrieved, and those between 200 and 1,000 feet away as "almost" *prima facie* aggrieved. *Id.* at 91. In addition to proximity, an almost *prima facie* aggrieved person must offer "plus factors," namely, "proof of the adverse effect the changed status of the [subject] property has, or could have, on the use, enjoyment and value" of the

---

protestants with standing who, despite being 'far removed from the subject property,' may nevertheless be able to establish 'the fact that his personal or property rights are specially and adversely affected by the board's action.'" *Ray II,* 430 Md. at 85-86 (quoting *Bryniarski*, 247 Md. at 145). According to the Supreme Court, this third category was "theoretically recognized, but never before found in fact[.]" *Id.* at 93; *see also State Ctr., LLC v. Lexington Charles Ltd. P'Ship*, 438 Md. 451, 536 (2014) (noting that courts have not "determine[d] even whether [the third category] exists in the material world."). Although in *Heard v. County Council of Prince George's County* we mentioned the possibility that a petitioner may establish standing by showing "direct and and specific harm[,]" 256 Md. App. 586, 615 (2022) ("*Heard I*"), the standing issue in *Heard* was resolved on other grounds. *Id.* at 617 (holding that the petitioner, who owned a property 990 feet from the subject property and alleged enough "plus factors[,]" was "specially aggrieved").

Here, Appellants did not make any argument under this "[n]ebulous third category," *State Ctr., LLC*, 438 Md. at 536, and did not allege that the proposed development would pose "a harm directly and specifically impacting their property." *Ray II*, 430 Md. at 92. *Ray II* instructs that increased traffic or change in character of neighborhood, absent sufficient proximity, do not constitute such harm. *See id.* at 93-96. Whether the third category of standing can be achieved by protestants who own property further removed from a proposed development site, but are able to demonstrate that the proposed development would present a "direct and specific" threat of flooding on their property, remains a question for another day.

7

individual's property.  *Ray II*, 430 Md. at 88-89 (quoting *DuBay v. Crane*, 240 Md. 180, 183 (1965)); *see also Heard v. Cnty. Council of Prince George's Cnty. ("Heard II")*, 260 Md. App. 417, 429 (2024) (defining "plus factors" as "considerations aside from living close to the disputed property, that would give a litigant a personal stake in the outcome of the zoning decision.").  Examples of "plus factors," include, among other things, a decrease in property values, unsafe traffic conditions, and excessive sewage disposal.  *Heard II*, 260 Md. App. at 429.  However, those outside the 1,000-foot radius have repeatedly been denied standing, even with "plus factors."  *Ray II*, 430 Md. at 92 (listing cases).  Thus, we recently instructed that, "[w]hile there is no bright-line rule . . . generally, a protestant must demonstrate that they live no more than 1,000 feet from the subject property" to qualify for standing.  *Heard II*, 260 Md. App. at 434 (internal quotation marks omitted).

Individuals who are deemed "generally aggrieved" do not have standing.  *Bell*, 442 Md. at 559.  However, in appeals of agency zoning or land use decisions, once any individual demonstrates *prima facie* aggrievement or special aggrievement, "the court will entertain the appeal even if other appellants are not persons aggrieved."  *Bryniarski*, 247 Md. at 144-45; *see also Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 205 Md. App. 636, 652 (2012) ("Where there exists a party having standing to bring an action or take an appeal, we shall not ordinarily inquire as to whether another party on the same side also has standing."), *aff'd*, 432 Md. 292 (2013).

A showing of *prima facie* aggrievement shifts the burden of proof, thus requiring "[t]he person challenging the fact of aggrievement . . . [to] com[e] forward with evidence to establish that the petitioner is not, in fact, aggrieved."  *Wier v. Witney Land Co.*, 257

8

Md. 600, 610-11 (1970) (quoting *Bryniarski*, 247 Md. at 145).  On the other hand, those

who seek to establish that they are almost *prima facie* aggrieved must meet "a stern burden

of proof" by offering additional evidence of special aggrievement.  *Ray v. Mayor & City

Council of Balt. ("Ray I")*, 230 Md. App. 15, 26 (2012), *aff'd*, 430 Md. 74 (2013); *see also

Greater Towson Council of Cmty. Associations v. DMS Dev., LLC*, 234 Md. App. 388, 412

(2017) (noting that, unless *prima facie* aggrieved, "[a]ll other petitioners have the burden .

. . to articulate what sets them apart from the general public.").  Generally, there is a positive

correlation between the distance from the subject property, and the quality and quantities

of proofs required to show special aggrievement.  *Ray II*, 430 Md. at 83.

## II.

## FACTUAL BACKGROUND

With the foregoing principles in mind, we set forth the key facts relevant to the

question of Appellants' standing to petition for judicial review.

### Administrative Proceedings

*Carpenter's Hearing before the Administrative Judge*

Terra Nova submitted a development proposal to the Baltimore County Department

of Permits, Approvals, and Inspections to convert the former Wilkins-Rogers flour plant,

known locally as "Ellicott Mill," to a mixed-use building consisting of apartment units, a

restaurant, retail space, and parking.  The existing flour plant, along with its surrounding

parking area,[7] occupies approximately 3.8 acres of a larger 11.8-acre property located within the Ellicott Mills National Historic District and bordered by the Patapsco River and Frederick Road, with a small portion extending into Howard County. Terra Nova has a contingent contract to purchase the property from Wilkins Rogers, pending final approval of the redevelopment plan and necessary zoning relief.

In addition to the redevelopment plan, Owners also filed zoning petitions for: (1) a special hearing, under the Baltimore County Zoning Regulations ("BCZR"), for approval of a maximum building height of 130 feet, and to obtain certain floodplain waivers under the Baltimore County Code ("BCC"); and, (2) variances from the BCZR to permit 278 parking spaces in lieu of 398, and to allow a portion of the parking area to be constructed with pervious materials.[8]

A hearing was held on August 11 and 12, 2022, before an administrative law judge ("ALJ") on Owners' redevelopment plan and related variance requests. Winifred Carpenter, a former Federal Emergency Management Agency employee, testified during

---

[7] The Board later noted in its opinion that the existing structure,

> encompasses over 186,000 square feet. . . . [and t]he nine-story concrete section reaching 122 feet in height is visible from Frederick Road. This section is connected by a discontinued railroad spur, to a brick and block building in the rear. Nine silos formerly used for grain storage are attached to the buildings on the northwestern side. A paved parking area surrounds the buildings.

[8] At the hearing before the administrative law judge, Terra Nova withdrew its petition for a special variance under BCZR § 4A02.4.D to allow the redevelopment in the "Ellicott Mill" traffic shed because a special variance was no longer required following enactment of Baltimore County Council Bill 25-22.

10

the ALJ proceedings about the flood risk in the area, as well as overflow parking and traffic safety issues.[9]  Carpenter detailed numerous flooding events in Ellicott City over the centuries, and showed photos of the Ellicott Mill site after Hurricane Agnes.

On August 25, 2022, and October 28, 2022 (on motion for reconsideration), the ALJ approved the redevelopment plan and the requested variances, subject to certain conditions, including that Owners and their successors "forever maintain the public open space areas depicted on the Plan."  Addressing the flooding concerns raised by Carpenter, the ALJ explained,

> It is beyond serious argument that climate change is real. Indeed FEMA's "100 year" storms now seem to occur regularly across the globe. And, as Mr. Tufaro noted, the historic Mill was built directly adjacent to the Patapsco River in order to harness the river's power for the flour mill.  As a result the entire site is within a "riverine" flood plain according to the applicable FEMA maps. As such, pursuant to BCC § 32-8-304(2), and Part 125 of the County Building Code no "new building" would be permitted at this site. But in this case no "new buildings" are proposed, and the DPR and DPW&T have determined that the only new construction that is proposed is covered by the exceptions of BCC § 32-4-414(c)(2), which allows for "[t]he installation of pond, culvert, bridge, street, utility or drainage facility" within the riverine floodplain. These include construction of the storm water management systems, refurbishing of the parking lots, and the addition of the pervious parking adjacent to the restaurant. The additional three floors of apartments that are proposed for the back building at the site are several stories above the FEMA flood elevations. Further, Mr. Tufaro and his expert engineers detailed the many design elements and specialized materials that will be built into this project to protect life and property.

> \* \* \*

> I understand that some community members have continuing concerns about flooding, density, parking, traffic, and environmental issues,

---

[9] Only one other person testified in opposition to the proposed development, but that person was not a party to the appeal to the Board or to this Court.

11

and share some of these concerns. However, the Developer offered expert testimony on all of these issues, which was supported by the county agency witnesses, and which was not rebutted by Ms. Carpenter or Ms. Nicoll – the only witnesses who testified and submitted exhibits in opposition to the development proposal.

The ALJ noted in his October order on motion for reconsideration that "the pervious parking area will have far less potential impacts on the floodplain than the huge existing mill building and all the existing impervious paving on the site."

Carpenter appealed the ALJ's decisions on both the redevelopment plan and the zoning variances.

*Hearing Before the Board*

On March 7 and 28, 2023, the Board heard Carpenter's consolidated appeal.[10]   In support of the redevelopment plan and zoning variances, Owners presented the testimony of Kristy Bischoff, project manager; Charles Alexander, an expert in architecture and building design; Wes Guckert, a professional transportation planner; Grace Kubofcik, a resident in favor of the redevelopment plan; and David Tufaro, principal of Terra Nova.

Winifred Carpenter and James Lobell testified in opposition.  Carpenter stated her home address, located "probably about three quarters of a mile" from Ellicott Mill. Carpenter explained that she lived there for 19 years and regularly passed the site either by car or on foot.  Nevertheless, she acknowledged that she could not see the site from her home.  She also had not heard or smelled anything from the flour plant prior to its closure in 2020, except for occasional flood alert sirens.

---

[10] Pursuant to notice, the hearing was conducted by remote access.

12

During the hearing, Carpenter expressed that the redevelopment plan and zoning variances would "affect[ ] the health, safety and welfare of" her community. Specifically, Carpenter emphasized that the local communities already had problems with parking and that the redevelopment plan was "going to add even more[.]" For example,

> [W]hen [people] park on Frederick Road, you have a lot of people in the road and . . . , past the entrance to the mill, to the right, there's no sidewalks, there's none. So, people literally park their cars and walk in Frederick Road to walk, and they walk down that, down that long stretch of Frederick Road into Howard County. That's their route. They never walk to the east, towards Catonsville.

Carpenter, however, clarified that those people "don't normally walk up into [her] neighborhood." She also added that her opposition to the redevelopment plan was not based on personal interest, explaining:

> I just care about my community. You know, I want people to feel comfortable coming to Old Ellicott City. I don't want them to have issues and, and, and, and people do. They, they, they come, and they can't find parking or they're driving around looking for parking and it's just not, it's, it's not good, it's not good for Old Ellicott City, it's not good for us in Oella. That's probably it.

Lobell, another community member, voiced similar concerns about the potential impacts of the redevelopment plan. He questioned the accuracy of the "data presented this morning about assumptions and, and numbers generated by assumptions." Lobell described his residence as located "way off of Frederick Road[,]" approximately "a quarter of a mile as the crow flies" from Ellicott Mill. Lobell testified that he passed by Carpenter's home when travelling on Oella Avenue to reach the site. Like Carpenter, Lobell also acknowledged that the site was not visible from his home.

After the hearing, the Board requested closing memoranda from the parties. The

13

appeal was also set for public deliberation before the Board could issue its decision.

*Other Appellants Enter the Appeal*

After the hearing was closed, but just before closing memoranda were filed per the Board's instruction, Carpenter's counsel filed an "entry of appearance" for Lobell and four other individuals—Killen, Richards, Wagandt, and Reardon—seeking to add them as parties to the proceeding.[11] The filing included each individual's name, home address, and email address. Killen and Richards listed addresses on Main Street in Ellicott City, Reardon provided an Oella Avenue address in Ellicott City, and Wagandt listed an address in Baltimore City. Terra Nova moved to strike the entry of appearance and to remove the additional individuals as parties.

On June 12, 2023, following public deliberation, the Board issued a written order and opinion in which it affirmed the ALJ's approval of both the redevelopment plan and zoning variance. In the same order and opinion, the Board granted in part and denied in part Terra Nova's motion to strike. The Board found "nothing in the record to establish the standing of the[ ] additional individuals" and, taking a "practical approach[,]" ruled that they could no longer challenge the ALJ's decision on the redevelopment plan because "there [was] nothing factual that an additional party could ever provide at this late stage[.]"

---

[11] Before the entry of appearance was filed, Killen, Richards, and Wagandt did not participate in the ALJ hearing or the Board hearing. In their affidavits, which we discuss below, Killen and Richards merely provide that they attended the ALJ and Board hearings online, and Wagandt states that she attended a community input meeting. In addition, although Reardon claims to have submitted testimony at the ALJ hearing, her name does not appear in the hearing transcript. Killen, Richards, Reardon, and Lobell also proffer that they signed an online petition opposing the redevelopment plan.

14

However, the Board allowed the additional individuals to join the zoning variance appeal as parties, citing its *de novo* standard of review in zoning appeals.

The Board also noted that even if the additional individuals qualified as parties in the administrative proceedings, they might still lack standing to petition for judicial review.[12]

> [W]e specifically declined to make any finding as to whether the new individuals had standing should the matter be appealed to Circuit Court where standing issues are more restricted. Indeed, the Board specifically holds that permitting the late entry into the *de novo* case should not be taken as an indication that the Board believes that these individuals have standing in the Circuit Court where standing requires more than "feeling aggrieved," particularly given the absence of factual record before the Board by which to evaluate standing.

## Judicial Review

*Petition for Judicial Review and Motion to Dismiss*

Appellants—Carpenter, Lobell, Killen, Reardon, Richards, and Wagandt—filed a petition for judicial review of the Board's July 12, 2023 opinion and order (the "Petition"). The Petition listed each Appellant's name and home address. Appellants' addresses were the same as those that had been provided to the Board, except for Wagandt, whose address changed from Baltimore City to Oella Avenue in Ellicott City.

On August 18, 2023, Owners moved to dismiss the Petition or, in the alternative, for summary judgment based on lack of standing. In their motion, Owners argued that

---

[12] In their briefing on appeal, to the extent that Appellants challenge the circuit court's finding that Killen, Reardon, Richards, and Wagandt were not parties to the Board's proceedings, the parties do not distinguish their arguments between the variance case and the development case.

"[b]ecause the [Appellants] were not parties to the proceeding below and/or cannot demonstrate aggrievement, they do not have standing to seek judicial review.[13] According to Owners, none of the Appellants, including Carpenter, lived close enough to the development site to show either *prima facie* aggrievement or special aggrievement. In support of their motion, Owners submitted Google Maps screenshots showing the following straight-line distance between each Appellant's address listed in the Petition and the Ellicott Mill building:

Carpenter: 3,797.92 feet

Killen: 3,834.08 feet

Richards: 1,231.47 feet

Wagandt: 1,204.35 feet

Reardon: 3,566.88 feet

Lobell: 4,363.05 feet

Owners argued that, even though the new address that Wagandt provided in the Petition was closest to the development site, according to Owners' measurements, it was still outside the range to show aggrievement. Owners presented a "Street View" image of the Oella Avenue property from Google Maps showing that it is an unimproved lot, as well

---

[13] While acknowledging that "it is not necessary that a protestant testify before the administrative agency" to become a party, Owners emphasized that there was "nothing in the record" to show that Killen, Reardon, Richards, or Wagandt participated in the proceedings below. Although Owners initially claimed that Lobell was also not a party to the administrative proceedings, they later conceded at the motions hearing that he was "likely" a party due to his testimony at the Board hearing.

16

as a copy of a Real Property Data Search for the addresses from the State Department of Assessments and Taxation ("SDAT"), indicating that it is owned by Granite Hill LLC.  For Richards, Owners presented a Street View image that showed her address as a commercial establishment.  Owners claimed that, regardless of these additional exhibits, the Petition should be dismissed for lack of standing because other than Lobell and Carpenter—whose properties were located almost 4,000 feet away—the records from the hearings before the ALJ and the Board were devoid of any evidence or testimony presented by Appellants regarding their aggrievement.

*Appellants' Affidavits*

On September 19, 2023, Appellants filed a response to Owners' motion.  Appellants disputed Owners' proximity measurements, arguing that the distance should be measured from the nearest boundary of the entire 11.8-acre property, rather than from the Ellicott Mill development site.  Appellants submitted affidavits listing their respective distances from the 11.8-acre property, measured by Baltimore County's "My Neighborhood" application, as follows:

Carpenter: 3,225.9 feet

Killen: 3,541.4 feet

Richards: 900.6 feet

Wagandt: 138.8 feet/860.3 feet[14]

---

[14] Wagandt's affidavit provided two different distance measurements regarding her Oella Avenue property: one marked "from Oella Avenue to closest point of subject property" (138.8 feet) and the other "from Oella Avenue to subject property" (860.3 feet).

Reardon: 2,752.8 feet

Lobell: 4,353.5 feet

In Wagandt's affidavit, she claimed "ownership interest" in several other properties near the development site, including one on Granite Hill Parkway, located "directly across Frederick Road from the subject property" and "within sight and sound of site." According to the "My Neighborhood" screenshot attached to the affidavit, that property was approximately 143.6 feet from Ellicott Mill. In the same affidavit, however, Wagandt acknowledged that all these properties, along with her Oella Avenue property, were actually "owned by The Company, which is comprised of the Oella Company, CLW-LLC and Granite Hill LLC." She did not explain her relationship to The Company or either of the LLCs.

Appellants' affidavits outlined their concerns about increased traffic, changes in the character of the neighborhood, and the heightened risk of flooding. For example, Wagandt's affidavit explained the likelihood of increased "flooding in the area":

> 7. As is now common knowledge, Ellicott City has a long history of frequent and significant flooding. The entire proposed development (the parking lot, the proposed entrance, the building itself and its parking garage, etc.) lies within a riverine floodplain and forest buffer associated with the Patapsco River. The Developer proposes to install new parking areas, widen Frederick Road, and remove trees along Frederick Road, all within the floodplain and forest buffer.
>
> 8. I believe the proposed development in the floodplain and forest buffer will only exacerbate and increase the likelihood of flooding in the area. The development plan filed by the Developer recognizes this, as it proposes the installation of thick aquarium windows, steel doors for the parking garage, a pedestrian evacuation bridge, and starting the residential units on the second floor rather than the ground floor of the building. The Developer does not have an evacuation plan in place, but proposes to include in the leases for the

18

residential units instructions that residents should "move their cars to higher ground" in event of a flood.

Richards's affidavit contained identical language regarding flooding concerns, with an additional statement about her own experience: "Due to the proximity of the Patapsco River, I have experienced flooding at my home/business. Just last week, the flood siren was activated."

Carpenter's affidavit echoed similar concerns, but emphasized her background as a former FEMA employee to underscore the risks associated with the proposed redevelopment, stating, in pertinent part:

> 8. Based on my experience at FEMA and familiarity with the site, I believe the proposed development in the floodplain and forest buffer will only exacerbate and increase the likelihood of flooding in the area. The development plan filed by the Developer recognizes this, as it proposes the installation of thick aquarium windows, steel doors for the parking garage, a pedestrian evacuation bridge, and starting the residential units on the second floor rather than the ground floor of the building. The Developer does not have an evacuation plan in place, but proposes to include in the leases for the residential units instructions that residents should "move their cars to higher ground" in event of a flood. This is counter to the best practices at FEMA.

Each affidavit concluded as follows: "I solemnly affirm under the penalties of perjury that the contents of the foregoing are true to the best of my knowledge, information, and belief."

*The Motions Hearing*

On October 25, 2023, the circuit court heard arguments from both parties on Owners' motion to dismiss or, in the alternative, for summary judgment. No witness testified, and no additional evidence was introduced at the hearing. For the most part, the

parties argued the motion based on the exhibits attached to their respective filings, including Appellants' affidavits.

Owners' counsel contended that, even accepting Appellants' proffered distances, none of their properties were close enough to be able to show the necessary aggrievement in order to have standing under Maryland law. Counsel highlighted that Carpenter, Lobell, Killen, and Reardon each own properties more than 2,500 feet away from the development site—well beyond the range typically required to establish special aggrievement, let alone *prima facie* aggrievement. Regarding Wagandt, counsel pointed out a lack of evidence for her claimed ownership interest in nearby properties, despite her burden to prove aggrievement. As for Richards, Owners' counsel argued that, even if her property was 900 feet from Ellicott Mill, which is "at the far end of the spectrum of proximity that the [c]ourt has suggested might be adequate," her affidavit provided only general concerns about traffic and flooding without specific proof of special aggrievement. Counsel further noted that Richards's property was not within sight or sound distance of the development site because there were "other properties in between."

Appellants' counsel responded that Richards and Wagandt qualified as *prima facie* aggrieved due to their proximity to the development site. Citing their affidavits, counsel emphasized that Richards's property was "only 900 feet away" and Wagandt's properties were as close as 138.8 feet from the site. Counsel did not dispute Owners' claim that Wagandt's properties were in fact owned by a corporate entity, acknowledging that they were "commercial" in nature. He also admitted that the Oella Avenue property was vacant and unimproved, but argued that the property's status did not affect Wagandt's

20

aggrievement claim, asserting, "none of the cases ma[d]e that distinction." For other

Appellants—Carpenter, Lobell, Killen, and Reardon—counsel urged the court to review

their respective affidavits, explaining that "the unique way[s]" in which they would be

impacted by the Ellicott Mill redevelopment rose to the level of special aggrievement.

*The Circuit Court's Ruling*

On November 9, 2023, the circuit court entered a memorandum opinion and order,

granting Owners' motion. At the outset of the memorandum opinion, the court noted that

it "considered matters outside of the pleadings in its analysis[,]" thus treating the motion

as one for summary judgment in accordance with Maryland Rule 2-322(c).[15] The court

discussed each Appellant's claim of standing, in relevant part, as follows:

*1. Winifred Carpenter*

[Owners] conceded in their briefs and at the hearing that Ms. Carpenter is
party to the proceeding.

Ms. Carpenter's aggrievement claims have been considered by this court,
which determined she does not meet the requirements for standing. Not only
is she far beyond what Maryland courts have considered sufficient proximity
for standing in these cases, but the one time someone her distance (approx.
3,800 feet) was considered, they were denied standing even with "plus

---

[15] In pertinent parts, Maryland Rule 2-322(c) provides:

If, on a motion to dismiss for failure of the pleading to state a claim upon
which relief can be granted, matters outside the pleading are presented to and
not excluded by the court, **the motion shall be treated as one for summary
judgment** and disposed of as provided in Rule 2-501, and all parties shall be
given reasonable opportunity to present all material made pertinent to such a
motion by Rule 2-501.

(Emphasis added).

21

factors". . . . Ms. Carpenter's "plus factors" are insufficient to convey standing upon her.

## 2. Jim Lobell

[Owners] conceded in their briefs and at the hearing that Mr. Lobell was party to the proceedings below.

Mr. Lobell does not have standing, as he is not adequately aggrieved. Mr. Lobell lives approximately 4,300 feet away from the development site. This is *farther* than Ms. Carpenter, who was already found by this court to not satisfy either aggrievement requirement due to insufficient proximity and "plus factors". Since he is not *prima facie* aggrieved, his specific allegations must overcome this lack of proximity to have standing. Based on the evidence provided, he does not. Mr. Lobell's complaints of increased traffic are identical to Ms. Carpenter's, which . . . are insufficient to establish special aggrievement. . . . His additional complaint, that he can hear the development, was also raised in [*Ray II*], and that sensory complaint was considered insufficient for a petitioner half Mr. Lobell's distance.

## 3. Gayle Killen

Regardless of Ms. Killen's status as party, she has failed to prove she is aggrieved. Ms. Killen lives approximately 3,500 feet from the development site, putting her closer than Ms. Carpenter but still far beyond what the appellate courts of Maryland have considered *prima facially* aggrieved. Ms. Killen also complains of increased traffic and fear of increased flooding. Flooding, like traffic, is a general, speculative grievance that does not harm any one individual specifically. In light of her distance and the generality of her "plus factors", Ms. Killen cannot be considered specially aggrieved. Lacking *prima facie* or special aggrievement, Ms. Killen does not have standing to bring suit.

## 4. Amanda Reardon

Ms. Reardon's status as a party is moot, as she has not proven she is aggrieved.  Ms. Reardon lives approximately 3,500 feet from the Site and the "plus factors" in her affidavit are identical to Mr. Lobell's. While Ms. Reardon is proximately closer than Ms. Carpenter, her plus factors are insufficiently unique to her to be considered specially aggrieved, and thus she lacks standing to bring this suit.

*5. Victoria Richards*

[Ms. Richards's] status as a party is moot, as she has not proven she is aggrieved.

Ms. Richards owns a business approximately 1,200 feet from the Site, bringing her proximity more in line with existing case law. . . . Ms. Richards'[s] proximity is more cognizable than her co-petitioners', but she must still assert sufficient facts to be considered specially aggrieved. Ms. Richards asserts similar concerns about the traffic situation as the other petitioners, as well as her belief that the forest buffer development will damage the floodplain and exacerbate flooding. While this complaint does come from someone closer to the Site, previous decisions indicate that complaints about traffic from individuals over 1,000 feet away indicate general aggrievement. *Ray* [*II*, 430 Md. at 96]. Similarly, while her concerns about flooding in Old Ellicott City are serious, flooding is a condition that already exists, and a harm that affects all members of the community equally; it is not specific to her. Furthermore, Ms. Richards fails to indicate how the proposed development will impact flooding or traffic, beyond her bald allegations that they will.

*6. Mary Jo Wagandt*

The only participation Ms. Wagandt states in her affidavit is that she attended the community input hearing. . . .Without anything else supporting her presence and position during the community input meeting, Ms. Wagandt cannot be considered a "party" for standing purposes, and thus does not have standing to bring this suit.

Even if Ms. Wagandt were found to be a party, it is moot, as she has not proven she is adequately aggrieved by the Board's decision either. Ms. Wagandt is similar distance to Ms. Richards from the Site (approximately 1,200 feet). Her "plus" factors are identical to those of Ms. Killen, and asserted with the same generality as the other Petitioners'. She therefore does not satisfy either aggrievement prong.

Accordingly, the circuit court concluded that "[n]one of the [Appellants] have standing to bring this suit" and granted Owners' motion.

Following the issuance of the court's memorandum opinion and order, Appellants filed a motion for reconsideration on November 28, 2023, which was denied on January 2, 2024. Appellants timely filed this appeal.

## III.

## DISCUSSION

At least one Appellant must meet *both* requirements for standing to petition for judicial review; namely, the Appellant(s) must have been (1) a party to the administrative proceedings, and (2) 'aggrieved' by the final decision of the agency. *Cnty. Council of Prince George's Cnty. v. Billings*, 420 Md. 84, 97, n.10 (2011). Because the circuit court decided that all Appellants were not sufficiently aggrieved to maintain the underlying petition for judicial review, and because we hold that the court did not err in this determination, we need not consider whether each Appellant was a party to the administrative proceedings.[16]

### A. Scope of Review and Proper Affidavits

Before examining the merits of Appellants' claims, we have one more threshold

---

[16] The circuit court determined that Carpenter and Lobell demonstrated that they had administrative standing, and that Wagandt did not. With regard to the remaining Appellants, the court decided the question of administrative standing was "moot" because they were not sufficiently aggrieved.

We note also that neither the parties on appeal, nor the circuit court below, have addressed how the Board's decision to admit all of the Appellants as parties in the variance case affected the question of their administrative standing in the consolidated case. We need not parse this complicating fact, however, because we conclude that the dispositive issue on appeal is whether one or more of the Appellants demonstrated that they were sufficiently aggrieved.

hurdle to clear. We must clarify the scope of what we may review, i.e., "the record that may be properly be considered[.]" *Imbraguglio v. Great Atl. & Pac. Tea Co., Inc.*, 358 Md. 194, 201 (2000).

When reviewing the dismissal of a complaint on a motion to dismiss, "we look only to the allegations in the complaint and any exhibits incorporated in it and 'assume the truth of all well-pled facts in the complaint as well as the reasonable inferences that may be drawn from those relevant and material facts.'" *Smith v. Danielczyk*, 400 Md. 98, 103-04 (2007) (quoting *Ricketts v. Ricketts*, 393 Md. 479, 491-92 (2006)). However, as the circuit court noted, Maryland Rule 2-322 requires that a motion to dismiss be treated as a motion for summary judgment when matters outside the pleadings are considered. Md. Rule 2-322(c). Because the circuit court expressly considered such matters here, including Owners' Google Maps screenshots and Appellants' affidavits, we treat the dismissal as a grant of summary judgment.

The circuit court may enter judgment in favor of the moving party on a motion for summary judgment "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2-501. Our law is clear that the circuit court, when deciding a motion for summary judgment, "determines issues of law" and "makes rulings as a matter of law, resolving no disputed issues of fact." *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737 (1993) (citations omitted). In reviewing the circuit court's grant of summary judgment, we evaluate "the same material from the record and decide[ ] the same legal issues as the circuit court[.]" *Lopata v. Miller*, 122 Md. App. 76, 83 (1998).

25

Therefore, like the circuit court, we independently review the record to determine (1) whether the parties generated a dispute of material fact and, if not, (2) whether the moving party was entitled to judgment as a matter of law. *Tyler v. City of Coll. Park*, 415 Md. 475, 498-99 (2010) (citations omitted).

In order to defeat a motion for summary judgment, the opposing party—the Appellants in this case—must "show that there is a genuine dispute as to a material fact by proffering facts which would be admissible in evidence." *Beatty*, 330 Md. at 737; *see also Ragin v. Porter Hayden Co.*, 133 Md. App. 116, 133 (2000) ("In order to proceed to trial, the non-moving party must . . . produce evidence of a disputed material fact."). To be sure, the moving party has the initial burden "to state sufficient grounds for summary judgment and to provide support for his or her arguments 'by placing before the court facts that would be admissible in evidence or otherwise detailing the absence of evidence in the record to support a cause of action.'" *Webb v. Joyce Real Estate, Inc.*, 108 Md. App. 512, 522 (1996) (quoting *Bond v. Nibco, Inc.*, 96 Md. App. 127, 134 (1993)). However, "[o]nce the movant makes [t]his showing, *the burden shifts to the nonmoving party* to 'identify with particularity the material facts that are disputed.'" *Thomas v. Shear*, 247 Md. App. 430, 447 (2020) (quoting *Nerenberg v. RICA of S. Md.*, 131 Md. App. 646, 660 (2000)). Of course, even where no genuine dispute of material fact is found to exist, the non-moving party may also defeat summary judgment by proving that the law does not support judgment in the moving party's favor. Md. Rule 2-501(a); *Thomas*, 247 Md. App. at 447.

Before this Court, Appellants rely on their affidavits extensively, as they did before the circuit court, to defeat summary judgment. Appellants contend that the circuit court

26

"mistakenly failed to consider" factual statements contained in their affidavits. Because Appellants' affidavits are not based on personal knowledge as required under the applicable Maryland Rules, however, they cannot be considered as admissible evidence sufficient to defeat summary judgment. We explain.

Maryland Rule 2-311(d) states: "[a] motion or *a response to a motion* that is based on facts not contained in the record *shall be supported by affidavit* and accompanied by any papers on which it is based." This requirement applies to "all motions, including summary judgment motions." *Bond*, 96 Md. App. at 135 (quoting Md. Rules Committee, Minutes of Oct. 17, 1981 meeting, at 48); *see also* Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 580 (5th ed. 2019) ("Like all motions, the motion for summary judgment must comply with the requirements of Rule 2-311."). Maryland Rules Commentary explains:

> The affidavit in support of many motions need not be based on personal knowledge, but may contain information under the following statement of the affiant: "I do solemnly affirm under the penalties of perjury that the contents of the foregoing paper are true to the best of my knowledge, information, and belief." **However, if the relief sought is dispositive of a claim or defense that is ordinarily within the province of the finder of fact, the affidavit will have to be on personal knowledge in compliance with the summary judgment rule.**

Niemeyer & Schuett, *supra*, at 337 (emphasis added).

Maryland Rule 2-501, in turn, sets forth the following requirements for a party's response to a summary judgment motion:

> **(b) Response.** A response to a written motion for summary judgment shall be in writing and shall (1) identify with particularity each material fact as to which it is contended that there is a genuine dispute and (2) as to each such fact, identify and attach the relevant portion of the specific document,

27

> discovery response, transcript of testimony (by page and line), or other statement under oath that demonstrates the dispute. **A response asserting the existence of a material fact or controverting any fact contained in the record shall be supported by an affidavit or other written statement under oath.**
>
> **(c) Form of Affidavit.** An affidavit supporting or opposing a motion for summary judgment shall be **made upon personal knowledge, shall set forth such facts as would be admissible in evidence**, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

Md. 2-501(b)-(c) (Emphasis added). In other words, to defeat a motion for summary judgment, the opposing party must provide "*factual assertions, under oath*, based on the *personal knowledge* of the one swearing out an affidavit, giving a deposition, or answering interrogatories.'" *Miller v. Ratner*, 114 Md. App. 18, 27 (1997) (quoting *Lowman v. Consol. Rail Corp.*, 68 Md. App. 64, 70 (1986)). Accordingly, an affidavit that accompanies a response to a summary judgment motion "must contain language that it is made on personal knowledge[.]" *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 263 (1994) (citations omitted). Maryland Rule 1-304 provides the form of the oath:

> The statement of the affiant may be made before an officer authorized to administer an oath or affirmation, who shall certify in writing to having administered the oath or taken the affirmation, or may be made by signing the statement in one of the following forms:
>
> > Generally. "I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief."
> >
> > **Personal Knowledge. "I solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of this document are true."**

Md. Rule 1-304 (emphasis added).

The Appellants' affidavits all contain the following language: "I solemnly affirm under the penalties of perjury that the contents of the foregoing are true to the best of *my knowledge, information, and belief*." (Emphasis added). The Supreme Court of Maryland has rejected similar language under Rule 2-501(c), for the reason that,

> The phrase "to the best of my knowledge" implies an acceptable margin of error in the declarant's statement. *See Cotton v. Frazier*, 170 Tenn. 301, 95 S.W.2d 45, 47 (1936) (finding that an affidavit would be "too much subject to the objection of uncertainty . . ." when qualified with the phrase "to the best of my knowledge."); *Swanson v. Kraft, Inc.*, 116 Idaho 315, 775 P.2d 629, 638 (1989) (Bistline, J., concurring) (finding that "to the best of my knowledge" was an "equivocating phrase."); *Portee v. State*, 277 Ga.App. 536, 627 S.E.2d 63, 66 (2006) (finding that "to the best of my knowledge" was a "representation that is equivocal at best").

*Muskin v. State Dept. of Assessments & Taxation*, 422 Md. 544, 567 (2011). Thus, "[i]t is unacceptable for the affiant to swear to facts 'on information' or 'on belief.'" Niemeyer & Schuett, *supra*, at 580.

Appellants may not rely on their affidavits to prove that they are specially aggrieved. *See Zilichikhis v. Montgomery Cnty.*, 223 Md. App. 158, 180 (2015) ("On its face, this affirmation, on 'knowledge, information and belief,' does not generate a genuine issue of fact."). "[A] court has 'no right' to consider any 'fact' set forth by a party" in a deficient affidavit at the summary judgment stage. *104 W. Washington St. II Corp. v. City of Hagerstown*, 173 Md. App. 553, 573 (2007) (quoting *Scully v. Tauber*, 138 Md. App. 423, 431 (2001)). Where, as here, the affiants state that the information contained in their affidavits is true and correct only "to the best of [the affiants'] knowledge, information and

29

belief," those affidavits "must be disregarded" under Maryland Rule 2-501(c).[17]  *Webb*,

108 Md. App. at 520; *see also Cottman v. Cottman*, 56 Md. App. 413, 429-30 (1983).

## B.  Merit of Appellants' Claims

We turn now to consider whether the circuit court erred in determining that all

Appellants were not specially aggrieved by the decision of the Board of Appeals.

Appellants argue, first, that the affidavits of Wagandt and Richards establish their sufficient

proximity to the Ellicott Mill to qualify as "*prima facie* aggrieved."  Second, Appellants

argue that, although Carpenter, Lobell, Killen, and Reardon own properties outside the

1,000-foot radius from the Ellicott Mill property,[18] and therefore do not qualify as "*prima*

*facie* aggrieved," their affidavits show "unique" and personal impacts from the

redevelopment, rendering them "almost *prima facie* aggrieved."

---

[17] We note that when parties below fail to challenge the sufficiency of an affidavit supporting or opposing a summary judgment motion, that issue may be waived.  *See A.J. Decoster Co..*, 333 Md. at 263 ("Because Decoster failed to raise the issue of the sufficiency of Westinghouse's affidavit below, we decline now to consider it.").  However, when "the propriety of granting summary judgment is challenged[,] this necessarily preserves for our consideration the issue of the substance of the affidavit upon which the motion was granted."  *Wyand v. Patterson Agency, Inc.*, 266 Md. 456, 461 (1972); *see also Mercier v. O'Neill Assocs., Inc.*, 249 Md. 286, 288 n.1 (1968) (noting that an affidavit stating facts based on "knowledge and belief" is defective in both form and substance).  Similarly, Appellants' claim that the circuit court "mistakenly ignored" their factual assertions in the affidavits necessarily implicates the validity of those affidavits.

[18] Before this Court, Appellants continue to cite the distances measured from the nearest boundary line of the 11.8-acre property rather than from the edge of the development site.  Because Owners argued below and on appeal that Appellants could not satisfy the requirements for standing even using these measurements, Appellants claim that Owners have "conceded that the measurements provided by Appellants are not in material dispute."

We will discuss the Appellants' affidavits in addressing their arguments as briefed; however, as noted above, we cannot attribute any evidentiary value to the statements contained therein.[19] *See Cnty. Comm'rs of Caroline Cnty v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 103-04 (2000) (finding no genuine dispute of material fact and affirming summary judgment after disregarding a defective affidavit). We examine each Appellant's special aggrievement claim, beginning with Wagandt.

### A. Wagandt

Appellants argue that Wagandt owns several properties located "as close as 144 feet, 139 feet, and 860 feet from" the development site, and therefore qualifies as *prima facie* aggrieved. Screenshots from the "My Neighborhood" application, attached to Wagandt's affidavit, show one property on Granite Hill Parkway located 143.6 feet from Ellicott Mill's border, and another on Oella Avenue about 138.8 feet from the "closest point" on the border. As noted, our decisional law prescribes that property owners within a 200-foot radius of a development site generally qualify as "adjoining, confronting, or nearby property owners," and that this proximity, by itself, establishes their *prima facie* aggrievement. *Ray II*, 430 Md. at 83-85. However, Appellants' argument that Wagandt is *prima facie* aggrieved fails because the evidence presented does not establish her relationship to any property less than 200 feet from the development site.

As explained above, we cannot rely on Wagandt's statement in her affidavit that she

---

[19] We observe that, even if we were able to consider the affidavits, we would agree with the circuit court that they failed to demonstrate special agreivement.

has an "ownership interest" in the properties shown on the "My Neighborhood" screenshots. *See 104 W. Washington St. II Corp.*, 173 Md. App. at 573 (providing that a court has "no right" to consider "facts" in a deficient affidavit when ruling on a summary judgment motion). However, even if we could consider the affidavit as evidence, Wagandt offered nothing further that evinces the extent of her interest or relationship to these properties. *See Hams of S. Md., Inc. v. Nationwide Mut. Ins. Co.*, 148 Md. App. 534, 539 (2002) (explaining that "general allegations" are insufficient to defeat a summary judgment motion). Indeed, even Wagandt's affidavit acknowledged that the properties "are owned by The Company, which is comprised of the Oella Company, CLW-LLC and Granite Hill LLC." Likewise, the SDAT Real Property Data Search record for the Oella Avenue property attached to Owners' motion shows Granite Hill LLC as the only owner of the property,[20] and Appellants never challenged the accuracy of this exhibit before the circuit court or on appeal.

To be sure, "property ownership is not a prerequisite to aggrievement[,]" *Chesapeake Bay Foundation v. Clickner*, 192 Md. App. 172, 189 (2010), but non-owners must prove special aggrievement by demonstrating that: (1) their "personal or property rights" would be "adversely affected by" a land use or zoning decision, and (2) the decision "personally and specially" would affect them "in a way different from that suffered by the

---

[20] Because this record is publicly available on the SDAT website, both the circuit court and this Court may take judicial notice of it. *See Price v. Upper Chesapeake Health Ventures*, 192 Md. App. 695, 706 n.11 (2010) (taking judicial notice of public records on SDAT's website and affirming a motion to dismiss).

public generally." *Ray v. Mayor & City Council of Balt. ("Ray I")*, 203 Md. App. 15, 25 (2012) (citations omitted), *aff'd*, 430 Md. 74 (2013). The burden of establishing special aggrievement by a non-owner was illustrated in *Chesapeake Bay Foundation v. Clickner.* Clickner, owner of Big Dobbins Island in the Magothy River, was granted two zoning variances that the appellants—Chesapeake Bay Foundation (the "CBF") and the Magothy River Association (the "MRA")—sought to challenge. *Clickner*, 192 Md. App. at 175. Both the CBF and the MRA had been engaged in "oyster and vegetation planting" in the Magothy River. *Id.* at 180. The Anne Arundel County Board of Appeals dismissed their appeal for lack of standing, reasoning that because "[o]nce a grass or oyster is released into the wild (or at least State[-]owned waters), there cannot be a continuing property interest in it." *Id.* We held that while the appellants' proprietary interest (or lack thereof) precluded them from asserting *prima facie* aggrievement, they could establish special aggrievement by showing "a personal interest that will be affected personally and specially in a way distinct from the general public." *Id.* at 190. We outlined the evidence and testimony that could be pertinent in showing such personal interest on remand before the Board of Appeals:

> **Appellants presented evidence to the Board that they have invested substantial amounts of volunteer time, as well as money**, on various submerged aquatic vegetation and oyster reef restoration projects in the Magothy River. The appellants also obtained permits from the State of Maryland in order to further their objectives. CBF has a scientific collection permit from the State of Maryland Department of Natural Resources ("DNR"). That permit allows CBF the right to go back, inspect and retrieve some oysters and reefs in the Magothy River. **MRA has a scientific license from the State of Maryland, which permits MRA to take oyster samples, seed the reefs and dive off the reefs in the Magothy River as part of a monitoring program. The testimony from the appellants was that there**

33

**are few, if any, other such licenses for the River. This evidence was unchallenged by appellees.** On remand, the Board must determine whether these investments of time and money and the permits the appellants hold are sufficient to satisfy the first prong of the test for aggrievement.

*Id.* at 190 (emphasis added and footnotes omitted).

Unlike the appellants in *Clickner*, Wagandt offered no competent evidence to show what her interest is in the properties that, as she describes in her affidavit, "are owned by The Company, which is comprised of the Oella Company, CLW-LLC and Granite Hill LLC." Appellants also cannot point to evidence that Wagandt was specially aggrieved in relation to these properties. The records from the hearings before the ALJ and the Board are devoid of any evidence or testimony presented by Wagandt—or any of the Appellants—regarding special aggrievement. And even if we were to consider Wagandt's allegations in her affidavit relating to the potential impact of the Ellicott Mill redevelopment on traffic conditions and "increased flooding," we agree with the circuit court that those allegations were "asserted with the same generality as the other"Appellants without linking the alleged impacts of the redevelopment to their properties.

### *B. Richards*

Appellants argue that Richards was also *prima facie* aggrieved. In support of this contention, Appellants rely on the statements in Richards's affidavit, in which she claims that she runs a business and lives on a property located "approximately 900', via straight line distance, from the subject property." Appellants' argument misses the mark.

Even assuming, *arguendo*, that Richards's property as described in her defective affidavit is 900.6 feet from the site, Maryland case law uniformly maintains that individuals

34

owning properties more than 200 feet from the subject property do not qualify as *prima facie* aggrieved. *Ray II*, 430 Md. at 83.

Richards's property is close enough to Ellicott Mills, however, that she may be almost *prima facie* aggrieved if she can demonstrate the "plus factors" that set her apart from the general public. *See Ray II*, 430 Md. at 88-89 ("In addition to showing the proximity of one property to the other, standing requires proof of the adverse effect the changed status of the rezoned property has, or could have, on the use, enjoyment and value of the property") (quoting *DuBay*, 240 Md. at 183 (brackets removed)). Nothing in the record, however, outside her deficient affidavit, establishes that Richards would suffer any harm by the proposed Ellicott Mill redevelopment that would set her apart from the general public. We agree with the circuit court that Richards, in her affidavit, asserts similar concerns about the traffic situation and potential for flooding as do the other Appellants, and that she "fails to indicate how the proposed development will impact flooding or traffic, beyond her bald allegations that they will."

We interject, here, our disagreement with the circuit court's reasoning that flooding cannot support Richards's special aggrievement claim because flooding is a "condition that already exists, and a harm that affects all members of the community equally[.]" In our view, the court mistakenly assumed that certain types of harm cannot qualify as special aggrievement simply because they are pre-existing and/or widespread. In *Ray II*, the Supreme Court of Maryland rejected such a notion, instead holding that, "once sufficient proximity is shown, some typical allegations of harm acquire legal significance[.]" 430 Md. at 83. The Court further explained:

For example, an owner's lay opinion of decreasing property values and increasing traffic has been considered sufficient for special aggrievement when combined with proximity that is almost as great as in cases where properties are "adjoining, confronting or nearby." *See Habliston v. Salisbury*, 258 Md. 350, 352, 354-55 [ ](1970) (protestant 200 to 500 feet away from reclassification of 16 acres to residential was specially aggrieved based on close proximity and lay testimony of decreasing property value); *Chatham Corp. v. Beltram*, 252 Md. 578, 579-80, 584 [ ] (1969) (protestants in sight of 6.74 acres reclassified to permit apartments were "specially aggrieved" based on "proximity of their homes within [1000 feet of the rezoning] and their feeling that the increased density would depreciate their property values"); *see also Alvey v. Hedin*, 243 Md. 334, 337, 339 [ ] (1966) (protestants 250 feet away from rezoning to construct marina on 4.75 acres were specially aggrieved based on close proximity and special problems with lights, noise, and refuse); *Toomey v. Gomeringer*, 235 Md. 456, 460 [ ] (1964) (about two city blocks away and testimony of real estate expert that there was change in residential character and decreasing property values).

*Id.* at 84.

The problem with Richards's special aggrievement claim is a lack of supporting evidence. *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737 (1993) (explaining that to defeat a motion for summary judgment, the opposing party must "proffer[ ] facts which would be admissible in evidence"). The record contains no testimony or other admissible evidence linking the proposed redevelopment plan to potential flooding on Richards's property. Even if we were to consider Richards's affidavit, her bald allegation that she "experienced flooding at [her] home/business" was not accompanied by any allegation linking any prior flooding at her home/business to Ellicott Mill, and she did not actually allege that the proposed redevelopment at Ellicott Mill would impact the risk of flooding on her own property. *See Ray II*, 430 Md. at 81 (defining "persons aggrieved" as "one whose personal or property rights are adversely affected *by the decision of the board*" (emphasis added)).

36

### C. *Carpenter, Lobell, Killen, and Reardon*

Appellants do not deny that the remaining individuals—Carpenter, Lobell, Killen, and Reardon—live more than 2,000 feet away from the Ellicott Mill development site. Nonetheless, they claim that each individual was "situated so as to be uniquely impact[ed] by" potential flooding and traffic issues, and that these aggrievements render them almost *prima facie* aggrieved.

In *State Center, LLC v. Lexington Charles Ltd. Partnership*, 438 Md. 451 (2014), our Supreme Court rejected a similar argument:

> In recognition of the[ ] strict proximity requirements, Appellees urge this Court to recognize that several other factors unique to this case confer standing upon them in order to overcome the lack of pure proximity. Appellees allege that the increased traffic, one business owner's lay opinion of decreased property values, and the prophecy of lost customers and tenants due to the competition from the [development site] are sufficient "plus factors" to confer property owner standing. Appellees misunderstand, however, the gravamen of *Ray*'s discussion of this second category of [almost *prima facie* aggrieved] protestants accorded with standing. . . .
>
> [B]ecause all Appellees here are a considerable distance from the [development site] (at least 0.57 miles away), they do not fit within this second category. Despite these alleged "plus factors," we conclude that Appellees are ineligible for "'almost' *prima facie* aggrieved" status due to a lack of sufficient proximity.

*Id.* at 535-36. The Court further warned that an overly broad interpretation of "proximity" could "destroy the very concept of 'special aggrievement.'" *Id.* at 531. Carpenter, Lobell, Killen, and Reardon each live almost 3,000 feet or more from Ellicott Mill. Allowing them to qualify as almost *prima facie* aggrieved on the record in this case would undermine our well-established precedents. *See Heard v. Cnty. Council of Prince George's Cnty. ("Heard I")*, 256 Md. App. 586, 615-16 (2022) ("[W]e have found no cases, in which a person

37

living over 2000 feet away, has been considered specially aggrieved.") (quoting *Ray II*, 430 Md. at 91)).

In sum, we hold that the circuit court properly entered summary judgment in favor of Owners based upon Appellants' lack of standing to petition for judicial review on the ground that they failed to establish that they were specially aggrieved by the decision of the Board approving the underlying redevelopment plan for Ellicott Mill.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**